# Balliet *versus* Brown.

1. A sum deposited for a certain use, if not so used, is " a debt due " to the depositor, within the meaning of section 35 of the Act of June 16th 1836 (P. L. 767)·; and an attachment execution will lie therefor.

2. At a sheriff's sale, on an execution against an incorporated company, A. bought in the company's property with money given him for this purpose by the company. He subsequently transferred said property in good faith, with the approval of the board of directors, and the assent and acquiescence of the stockholders of the company, to a newly organized corporation into which the old one was merged. After this transfer of the property by A. an attachment execution was issued against him as garnishee of the original company :

*Held,* that he was not liable as garnishee of said company, either for the property purchased for them and so transferred to the new corporation, or for the value of it.

3. The directors of a corporation have no right to sell or dispose of the company's movable property, where this prevents the continuance of its business ; such a sale by them is void against non-assenting stockholders. But if the stockholders, having notice, are silent and make no objection whatever, by their acquiescence they will be taken as assenting.

May 2d 1883. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR. C. J., absent.

ERROR to the Court of Common Pleas of *Lehigh county :* Of July Term 1882, No. 24.

Attachment execution, by Brown & Bro., against Aaron Balliet, garnishee of the Lehigh Valley Iron Company, issued on a judgment recovered by the plaintiffs against the said iron company.

On the trial, before ALBRIGHT, P. J., the following facts appeared : Balliet was a director of the Lehigh Valley Iron Company, and with Joseph Laubach and Benjamin S. Levan, two other directors, indorsed notes for the accommodation of the company to the amount of $70,000. This paper was held by several banks, and they also held as collateral security for the same certain bonds of the iron company.

In 1878 the company became insolvent, and on July 7th 1879, in accordance with a resolution to that effect, the directors confessed a judgment for $50,000 to the indorsers of the said notes. The same day this judgment was duly assigned, by the

[Balliet v. Brown.]

holders thereof to Aaron Balliet, " in trust for the said banks, the same to be collected and applied to said notes in the proportion to which we are respectively liable."

Execution was issued on the judgment, and the real and personal property of the iron company sold by the sheriff thereunder and purchased by Balliet; the personal property bringing $3,158.17.

After execution was issued, but before the sale, Balliet received from the treasurer of the company $5,190. The plaintiffs claimed that this money was given to him to enable him to buy in the property at the sheriff's sale for the company, and that he therefore held, first the money and afterwards the property, simply as trustee for the company ; while the defendant, on the other hand, alleged that the money was paid to him (Balliet) on account of his judgment of $50,000 against the company, and consequently that both the money and the property were his, and not subject to garnishment in a suit against the company.

Immediately after the sheriff's sale, at a meeting of stockholders and creditors, it was proposed that of the bonds held by the banks as collateral for their loans, each stockholder should purchase a certain number in proportion to the shares of stock he held, and that the creditors should take amounts apportioned with reference to their respective claims ; and further, that the creditors should be paid in full in bonds and stock of a new company, which it was proposed to organize in place of the Lehigh Valley Iron Company, and to which new company Balliet then agreed to transfer all the property purchased by him at the sheriff's sale.

This proposition was accepted by the meeting, at which three-fourths of the stockholders and about the same proportion of the unsecured creditors were represented. The plaintiffs were present and took part in the proceedings and signed the subscription list of the new company.

In pursuance of the action taken at this meeting, the stockholders and a large proportion of the creditors reorganized under the name of The Coplay Iron Company (limited) ; and to this new company Balliet, in accordance with the original proposition thus ratified and carried out, transferred all the property which he had bought at the sheriff's sale.

It was after the transfer of this property to the new company by Balliet, that the plaintiffs issued their writ of attachment execution against him.

The plaintiffs made the following offer of evidence : " Plaintiffs propose to show that the banks never accepted any transfer of their judgment on January 7th 1879, or exercised any acts of ownership over it whatever." Objected to by de-

[Balliet *v.* Brown.]

fendant. Objection overruled and evidence admitted. (Second assignment of error.)

The defendant made the following offer: "Defendants propose to show by the witness on cross-examination that the report presented and adopted at the meeting, and upon which he says the subscriptions were made and the Coplay Iron Company, limited, was organized, was fully carried out and consummated, and at the time of the impetration of this writ no portion of the personal property of the Lehigh Valley Iron Company was in the hands of the witness or that of Mr. Balliet." Objected to. Objection sustained and evidence rejected. (Fourth assignment of error.)

The plaintiffs asked the court to charge:

(1) "If, at the time of the service of this writ of attachment, or since, there was in the hands of the garnishee any property or money belonging to the Lehigh Valley Iron Company, your verdict should be in favor of the plaintiffs for the amount or so much thereof as will satisfy their judgment.

"Answer. This is affirmed. The property other than money must be goods or chattels, pawned, pledged or demised. (Tenth assignment of error.)

(2) "If the personal property purchased by Aaron Balliet at the sheriff's sale was purchased for the Lehigh Valley Iron Company, or was struck down to Aaron Balliet, and was paid for with the moneys of the Lehigh Valley Iron Company, furnished for that purpose, it became the property of the Lehigh Valley Iron Company; and if the property, so being the property of the Lehigh Valley Iron Company, remained in the hands of Aaron Balliet when the attachment was served, or was converted to his own use without proper authority from the Lehigh Valley Iron Company, such property, or its value, is subject to attachment in the hands of Aaron Balliet at the suit of creditors of the Lehigh Valley Iron Company.

Answer. "If it was purchased for the Lehigh Valley Iron Company, and remained in his hand when the writ in this case issued, it would have been liable to a writ of fieri facias. The point as drawn is answered in the negative. If, however, Aaron Balliet purchased with money furnished him by the defendant on his judgment for that purpose, then, as stated in the general charge, plaintiffs can recover for the value of the property so purchased, he having parted with it prior to the service of the writ in this case." (Eleventh assignment of error.)

In the general charge the court instructed the jury, inter alia, as follows: "If you find that what the plaintiffs allege to have been the fact is proved,—to wit, that after the giving of the judgment, and before the sheriff's sale, the officers of the Lehigh Valley Iron Company passed over and paid to Aaron

[Balliet v. Brown.]

Balliet this $5,190, for the express purpose that it should be used by Balliet to pay for the personal property which he, Balliet, might purchase at the sheriff's sale of the company's property, and Aaron Balliet, knowing that such was the purpose and intention of Mr. Levan, who gave him the money, and he, Balliet, received it for that purpose, or if he received the company's money, agreeing to use it to pay for goods which he might buy at the sale on his judgment against the company,—then he may be held liable in this case because of that transaction. If, by an arrangement and agreement, he used the company's money to buy goods at the sheriff's sale, and it was received for that purpose, and not as a payment on account of the judgment, it was a fraudulent contrivance, and the plaintiffs may in this issue recover the value of the goods that Balliet thus fraudulently obtained under cover of the sheriff's sale, and in that event there may be a recovery in this case for the amount not exceeding the value of the goods which Balliet so purchased. . . . . If you find this question against Aaron Balliet you will inquire and determine the value of the property he thus obtained and transferred to the Coplay Iron Company (limited), and you will find for the value in favor of the plaintiff. . . . . If you believe that the officers of the iron company had the money which they turned over, and that it was not money which they had realized from the sale of goods bound by the lien of the execution ; and if they gave it to Aaron Balliet, and he received it for the purpose of paying, at the sheriff's sale, for the property which he might purchase on his judgment against the company, he took no title to the goods he purchased at the sheriff's sale that can stand against the plaintiffs in this issue, then it was in effect no sale at all ; and I will state here parenthetically, that if Aaron Balliet had no title by his purchase at sheriff's sale, the plaintiffs, or judgment creditors, could have issued an execution and could have seized the goods themselves ; but it having been shown that Aaron Balliet, before the issue of this attachment, parted with the possession of the goods he thus purchased ; therefore, I say to you, if you find this purchase at sheriff's sale was with the money of the company, that the plaintiff in this attachment proceeding may recover against Aaron Balliet the value of the goods he so purchased and disposed of ; and that, gentlemen, is the only issue that can be tried by this jury in this proceeding." (Thirteenth, fourteenth and fifteenth assignments of error.)

Verdict for the plaintiffs for the amount of their judgment and interest. Judgment having been entered on the verdict, Aaron Balliet took this writ of error, assigning for error the admission and rejection of evidence ; the answers to the plain-

tiffs' points as above noted and those parts of the general charge cited.

*Edward Harvey* (with whom was *O. E. Holman*), for plaintiff in error.—The Act of June 16th 1836 (P. L. 767) clearly specifies what is attachable. It limits the process to debts due the defendant, deposits of money, and goods pawned, pledged, or demised. It is uniformly held that it will not lie for any cause of action founded in tort : Drake on At. § 10, p. 9 ; Elliott *v.* Jackson, 3 Wis: 649 ; Jacoby *v.* Gogell, 5 S. & R. 450 ; Porter *v.* Hildebrand, 2 Harris 129 ; Strock *v.* Little, 9 Wright 416. If, then, Balliet did acquire title to the personalty with the money of the Valley Iron Company, and for the purpose of holding it for that company, and in violation of that contract did transfer it to another, he cannot be held. But the Valley Iron Company ratified and confirmed all he did. It had no right of action against him. And if it had no right of action, how can it be said that the attaching creditors have ? The mere fact that the property passed through his hands does not render him liable in attachment for the value of it after he has transferred it to another. If he had thereby perpetrated a fraud on the company he would not be liable in attachment ; for that would be for damages in tort. But there was no fraud. As soon as the property was struck down to him, he offered it to the stockholders and creditors of the company. They formed a plan for reorganization and for providing for the debts of the company. In pursuance of this plan, with due notice to all interested parties, and at their direction, Balliet transferred the property to the new company several weeks before the writ in this case was issued. .

*R. E. Wright & Son* (with whom were *John D. Stiles & Son*), for defendants in error.—Whether the fund in Balliet's hands be considered as the value of goods wrongfully converted, or as a sum deposited in trust for a purpose, and then not used for that purpose, it was a fund liable to attachment : Schott *v.* Chancellor, 8 Harris 195 ; same case, 11 Harris 71 ; French *v.* Breidelman, 2 Grant 319 ; Heath *v.* Page, 13 P. F. S. 108. It was beyond the power of the directors to ratify the transfer of the company's property by Balliet to the Coplay Iron Company. They have no right, without the sanction of the stockholders, to wind up the corporation, to destroy its business or to deprive it of property essentially necessary to carry out the purposes for which the company was organized.

In the case at bar there was no meeting of the stockholders ; there were consultations of some stockholders at Allentown, but the only meeting of stockholders as such that had been called was postponed and countermanded until after the acknow-

ledgment of the sheriff's deeds of the company's property by these " directors."

Mr. Justice CLARK delivered the opinion of the court, October 1st 1883.

An attachment execution will not lie for a demand founded in tort, as for the detention of chattels ; it can only be sustained for a debt arising from contract expressed or implied : Boyer *v.* Bullard, 40 Leg. Int. 302.    But where there is a conversion, there is an implied sale, and, waiving the tort, an action of assumpsit for goods sold and delivered can be maintained upon the contract implied ; the value is regarded as " a debt due " within the meaning of the 35th section of the Act of June 16th 1836 : Bethlehem *v.* Perseverance Fire Co., 31 P. F. Smith 445.    It is equally clear that a sum deposited for a certain use, if not so used, is " a debt due " to the depositor.

If, therefore, in point of fact, there was such a fund in the hands of Aaron Balliet, as was alleged, whether it be considered as the value of goods wrongfully converted, or a sum remaining upon deposit, under the circumstances stated it would be liable to attachment in his hands in the form of proceeding here pursued.

But in the ascertainment of the fact whether there was such a fund in the hands of the garnishee, we think the court fell into error.

The jury having found for the plaintiff, we are obliged to assume, let the fact be as it may, that the $5,190, paid by the Lehigh Iron Company to Aaron Balliet, prior to the sheriff's sale of the company's personal property, was not paid on his indemnifying judgment of $50,000, but was deposited with him, to buy in the property at the sale.

The property, having been purchased by Balliet at the sale, on the 30th January 1879, with the company's money, for the company's use, was the company's property, and was liable to execution for the company's debts after the sale as before.    The possession was undisturbed, the property remaining with the company.

Balliet, however, assumed the ownership, and the company, by its agents, directors and managers, recognized his right; even the stockholders, in their meeting, treated the property as belonging to Balliet, and made the transfer of it by Balliet the basis of the proposed reorganization.

This transfer was made and the property delivered to the new organization known as the Coplay Iron Co. Limited, two weeks or more before the service of the writ of attachment in this case.

The court below states in the general charge : " It is asserted

[Balliet *v.* Brown.]

on both sides, and all the evidence is to that effect, that before this attachment was served on Aaron Balliet (the service was on the 17th July 1879) he parted with the possession of this property, and transferred it to the Coplay Iron Co. Limited." The transfer would appear to have been pursuant to negotiations for a reorganization which began among the stockholders and creditors of the Lehigh Valley Iron Co. in the month of March 1879, of which negotiations all the stockholders and creditors had notice, and in which a large majority joined; it would appear also to have been made openly and after due deliberation of all persons in interest.

It appears in the evidence that on the 31st March 1879, a circular letter signed by a committee of the directors of the Lehigh Valley Iron Company, was addressed to the stockholders and creditors of the company calling a special joint meeting, to take action thereon at the American Hotel in Allentown, April 15th 1879, stating briefly the basis of the proposed reorganization.

In this circular letter it is stated that: "Arrangements have been made with Mr. Aaron Balliet, the purchaser of the real and personal property of the Lehigh Valley Iron Company, to transfer the same at cost to the stockholders and creditors of said company, if they will raise sufficient funds to lift the pledged bonds, or so many of said bonds as may be found necessary to lift, by subscribing for and taking at par the 6 per cent. first mortgage bonds of said company." And also, that it was necessary "for all stockholders who wished to have any interest in the reorganized company to be either present in person or represented by some one authorized to act for them."

In pursuance of the circular call, at the time and place designated, a meeting was held, at which three-fourths of the stock, and about the same proportion of the unsecured business debts were represented; the plaintiff in this attachment was also present, and after full consideration the proposition or suggestion submitted by the committee of the directors, was adopted, and the same committee were directed to "issue an explanatory circular requesting each stockholder and creditor, to express their willingness or unwillingness to join in the reorganization as proposed."

The meeting then adjourned to meet at the same place, on the 25th April, then next ensuing.

This "explanatory circular" contained a particular statement of the terms of the reorganization, of the financial condition of the company, the proposition submitted to the stockholders and creditors for reorganization, and a notice for the adjourned meeting. The same circular also contains the following :

"It was stated in the previous circular, that arrangements had been made with Mr. Aaron Balliet, the purchaser of the real and personal property of the company, to transfer the same at cost, to the stockholders and creditors of said company, if sufficient funds are raised to lift the pledged bonds, or so many of said bonds as it may be found necessary to redeem."

A supplemental circular letter, more particularly detailing the basis of the reorganization, was subsequently forwarded to all parties interested, in which the whole scheme, apparently, was fully developed.

On the 25th of April 1879, such proceedings were had, that a paper was prepared for subscription to the bonds of the Lehigh Valley Iron Co., on the terms of the proposed reorganization and upon the basis and plan adopted at the meeting of April 15th 1879, providing for the unsecured creditors as contemplated according to that plan. In this paper it was, inter alia, stipulated as follows:

"This subscription is not to be binding. unless satisfactory arrangements are made for the reorganization of the company, and the transfer of the real and personal property, late of the said Lehigh Valley Iron Company, to the reorganized company."

Upon this paper the present plaintiffs, S. A. Brown & Bro., as creditors, subscribed for bonds to the amount of $1,750.

Other meetings were subsequently held; the scheme for reorganization was finally perfected, and on the 1st day of July 1879, the property purchased by Balliet at the sheriff's sale was formally transferred to the Coplay Iron Co., the new organization, and was delivered accordingly.

This transfer, and the entire scheme of reorganization, was effected by and with full sanction and authority of the directors of the Lehigh Valley Iron Co.; although it appears that the plaintiffs, one of the creditors, withdrew from the subscriptions they had made, and did not enter into the organization of the Coplay Iron Co., as they had agreed. Now, if these facts which appear in the testimony are true, and the transaction was unaffected by fraud, we think that as Aaron Balliet had parted with the property, in good faith, with the approval of the board of directors of the Lehigh Valley Iron Co., he could not in any sense be held as a garnishee, either for the property or the value of it, as he had neither the property nor the value of it, in his hands at the time of the service of the writ of attachment upon him. He held the personal property as a trustee for the company, and the transfer of it was with the company's consent.

It would appear that he received nothing from the Coplay Iron Co. for the property, more than any other creditor received upon entering into the new organization; he simply turned the

[Balliet *v.* Brown.]

property over upon the footing of the arrangement which the plaintiffs and others of the creditors and stockholders had effected, and which appears to have been open and free for all.

S. A. Brown & Bro. were of course not obliged to enter into the scheme of reorganization; they might, by issuing execution, have seized the property in Balliet's hands; they had a right to rely upon their rights as creditors, but they did not; on the contrary, they appear to have encouraged the reorganization based upon the transfer subsequently made.

It is objected, however, that the "directors of a corporation are its agents, with limited power, having authority to do everything that is needful and proper to carry on its business; to conduct its affairs in furtherance of the end of its institution, and for these purposes to control its property and assets. They have no right, without the sanction of the stockholders, to wind up the corporation, to destroy its business or to deprive it of property essentially necessary to carry out the purposes for which the company was organized."

It is certainly true, that the directors of a corporation have no right to sell or dispose of its movable property where this prevents the continuance of their business; such a sale made by them is void as against non-assenting stockholders. But, if the stockholders are silent, make no objection whatever, by their acquiescence they will be taken as assenting. This proceeding is not by a stockholder, but by a stranger. How can creditors complain, if the stockholders are consenting to the negotiations?

The creditor has a right to enforce collection of his debt and resort to all the remedies which the law allows to that end, but corporations or partnerships cannot be obliged by their creditors to continue in business.

We think, therefore, that the court erred in instructing the jury, that if they should find this purchase at the sheriff's sale was with the money of the company, the plaintiff in the attachment should recover against Balliet the value of the goods he so purchased and disposed of, and that this was the only issue of fact in the cause.

If the property was so purchased with the money of the company, it was, it is true, the company's property; but if, with the company's consent, without fraud and without special advantage over others similarly situated, he transferred the property to the Coplay Iron Co., pursuant to a plan of reorganization which was open and free, how can he, Balliet, be held as garnishee for moneys and effects which were thus admittedly not in his hands at the service of the writ?

The question of fact submitted to the jury was not, therefore, the only question for their consideration.

[Blattenberger *v.* Holman.]

If the property or money had been found in Balliet's hands, the case might have been altogether different; but he had neither, and it is not pretended that there was either fraud or unfair dealing.

We are also of opinion that it was irrelevant matter whether or not the banks accepted the transfer of the judgment made on 7th July 1879, or exercised any acts of ownership over it whatever.

It was the right of the indorsers to protection in this form, not only as against the company, but as against each other, and the bank, without any assignment, had the right to avail themselves of the security thus afforded.

It follows, therefore, that the 2d, 4th, 10th, 11th, 13th, 14th and 15th errors are sustained, and the remaining assignments are dismissed.

Judgment reversed and venire facias de novo awarded.