## Weisbecker, Appellant, *v.* Hosiery Patents, Inc., et al.

Argued January 10, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William H. Seyfert,* with him *Mabel B. Ditter* and *John A. Boyle,* for appellant.

*Leonard J. Schwartz,* with him *John E. Flynn, David W. Neisenbaum* and *High, Swartz, Flynn & Roberts,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, MARCH 25, 1947:

This is an appeal from the order of the court below sustaining defendants' preliminary objections to a bill in equity filed by the appellant, Frank G. Weisbecker, and dismissing the bill. Appellant was the inventor of certain improvements on hosiery knitting machinery. In consideration of providing funds for the procurement of several patents upon his inventions and for developing, exploiting and marketing them, appellant

assigned a two-thirds interest in his inventions to David L. Subin and Benjamin Subin, party defendants. As a result of an oral agreement among the respective parties, a corporation was organized under the laws of Pennsylvania on September 20, 1935, known as Hosiery Patents, Inc. and the patents in question were thereupon assigned to it. The corporation issued 30 shares of stock and distributed 10 shares to each of the defendants, David L. Subin and Benjamin Subin, and 10 shares to plaintiff. Subsequently, Benjamin Subin transferred nine shares to David L. Subin and one share to Emanuel A. Lerman, a co-defendant in the present proceedings. At a special meeting of the stockholders of Hosiery Patents, Inc., held on July 19, 1945, David L. Subin and Emanuel A. Lerman voted their stock in favor of a resolution adopted by the board of directors proposing the dissolution of the corporation and the liquidation of its assets. Plaintiff voted his 10 shares against it. On July 20, 1945, the plaintiff filed a bill for a special injunction to enjoin the defendants, David L. Subin and Emanuel A. Lerman, from proceeding to dissolve the corporation and from selling its assets and obtained a restraining order prohibiting the sale of the corporation's assets until the date set for hearing, July 26, 1945. Prior to the date of hearing, the plaintiff and defendants agreed, on July 25, that the patents be offered for public sale on August 17th or 24th and, as a result, the parties filed a stipulation of counsel vacating the restraining order issued. Plaintiff avers that he agreed to this stipulation because defendants' counsel represented to him that the improvements covered by the patents could not be produced at a profit and that the defendants desired to have no further interest in the patents, from which plaintiff and his counsel were led to believe that neither the defendants nor their agents would bid for or purchase the same at their own sale.

The patents were sold at an auction on August 17, 1945. Bids reaching a maximum of $4,900 were entered by outside interests. Plaintiff bid $20,000 while defendant corporation, Flexy Carriers, Inc., a corporation controlled by David L. Subin, bid $20,100 and thereby secured the patents. Flexy Carriers, Inc., is a Pennsylvania corporation chartered August 24, 1945, in which defendant, David L. Subin, owns a majority of the stock. The machinery and equipment of Hosiery Patents, Inc. were sold at public auction on October 18 and November 15, 1945 under conditions approved by the plaintiff. A portion of the machinery was purchased by David Subin while the remainder was sold to outside interests.

In addition to the foregoing, the bill avers that the price of $20,100 paid for the patents by Flexy Carriers, Inc., is a grossly inadequate one and that the corporation, Flexy Carriers, Inc., has been formed and is controlled by the defendant, David L. Subin, and is operating and conducting the same business formerly conducted by Hosiery Patents, Inc., upon the same premises formerly used by Hosiery Patents, Inc., at Fifth and Maple Streets, Lansdale, Pa. The bill also states that the machinery and equipment of Hosiery Patents, Inc., as set forth in Exhibit C, were thereupon sold at public auction on October 18, 1945, and the defendants have refused to disclose to the plaintiff the amounts paid for the same and the names of the purchasers. Plaintiff "believes and avers that a substantial part of the machinery and equipment was sold to the defendants or their agents or nominees for a grossly inadequate price." On November 15, 1945, other parts of machinery, as set forth in Exhibit D, were sold at public auction and the defendants refused to disclose to the plaintiff the amounts paid for them and the name of the purchasers. The plaintiff avers that a substantial part thereof was sold to the defendants or to their agents or nominees at a grossly inadequate price, and that the acts of the

defendants, David L. Subin, Benjamin Subin and Emanuel A. Lerman, in selling the assets, including the patents, were a fraud upon the corporation, Hosiery Patents, Inc., and upon the plaintiff as a minority stockholder therein, and that the acts of the defendants, David L. Subin, Benjamin Subin and Emanuel A. Lerman, were planned, devised and executed for the purpose of effecting a confiscation of all the corporation's assets for the individual use, benefit and wrongful profit of the defendants, David L. Subin, Benjamin Subin and Emanuel A. Lerman, who, as officers and directors of Hosiery Patents, Inc., stood in a fiduciary relationship thereto.

The bill prays that the sale of the patents by Hosiery Patents, Inc. to Flexy Carriers, Inc., on August 17, 1945, be set aside and declared void; that the defendant, Hosiery Patents, Inc., be compelled to make a full disclosure of the names of the purchasers of its machinery and equipment and the amounts paid therefor at the sale on October 18, 1945, and at the sale on November 15, 1945, as the property of the Arcadia Hosiery Company, and that the sale of so much as may have been purchased by any of the defendants or their agents or nominees, or which has subsequently been transferred to any of the defendants, be set aside and declared void; that the defendants, Flexy Carriers, Inc., David L. Subin, Benjamin Subin and Emanuel Lerman be decreed constructive trustees for Hosiery Patents, Inc., with respect to the profits derived from any or all property or assets obtained from Hosiery Patents, Inc., and that they be compelled to account for such profits; that they, their agents, servants and employees, be enjoined from using in any manner the patents, machinery, equipment and other assets and property of Hosiery Patents, Inc., including the name "Flexy Carriers." That Flexy Carriers, Inc., be enjoined from selling or leasing any of the patents, and from manufacturing, selling or leasing

any machinery, equipment, parts or other articles covered by the patents. That the defendants make full discovery of all matters herein charged and that a receiver be appointed to take immediate possession of all books, records, money, choses in action, patents, machinery, equipment, and all other property and assets of Hosiery Patents, Inc., for the benefit of the plaintiff and all other parties in interest. "Further relief" is also prayed for.

The court below in its opinion said, inter alia: "Under the Act of 1933, P. L. 364, section 1102, the corporation had the right to dissolve and the plaintiff does not question the legality of the proceedings to dissolve except to allege generally that such action was a fraud upon the plaintiff and done with the intent to deprive him of his patents. However, the exercise by a corporation in a legal manner of rights given to it under a statute, cannot be said to be fraud." This statement is an over-simplification of the question involved. Courts have often held that an act which by itself may be entirely legal yet, if it is part of a scheme whose object is the invasion of another's right, it may be enjoined. Sometimes an act takes its character from its motive, for example, the act of an insolvent debtor in conveying away his property.

It is true that section 1102 of the Act of 1933, 15 PS 2852-1102, referred to provides that, "Any business corporation which has commenced business and which has issued shares may elect to dissolve voluntarily, and wind up its affairs, by a written agreement signed by all the shareholders of record of the corporation consenting to its dissolution, or after the board of directors shall have adopted a resolution recommending that the corporation be dissolved voluntarily, and directing that the question of dissolution be submitted to a vote of the shareholders at a meeting which may be either an annual meeting of the shareholders, or a special meeting of the

shareholders entitled to vote on the question. . . . The resolution shall be declared adopted upon receiving the affirmative vote of the holders of at least a majority of the outstanding shares entitled to vote on the resolution. . . ." But it is equally true that section 408 of Article IV, 15 PS 2852-408, of this same act, provides as follows: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in their personal business affairs." Vol. 1, section 2(b) of the Restatement of Trusts defines "fiduciary relation" as follows: "A person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation." The Restatement of the Law of Restitution, section 138, provides that, "A fiduciary who has acquired a benefit by a breach of his duty as a fiduciary is under a duty of restitution to the beneficiary."

1 Bogert, Trust and Trustees, section 16, p. 62, says: "The majority stockholders undoubtedly owe a duty to the minority and on account of that duty have occasionally been called 'trustees' for the minority: Boyd v. New York & H. R. Co. (D.C.) 220 F. 174. The duty is not to use the power which the majority possesses for the selfish interests of the majority, in such a way as to exclude the minority from their due share of the benefits accruing from the operation of the corporation: Southern Pac. Co. v. Bogert, 39 S. Ct. 533, 250 U. S. 483, 63 L. Ed. 1099; Red Bud Realty Co. v. South, 241 S. W. 21, 153 Ark. 380. Equity will enjoin this unfair use of power and give remedies for its abuse: Southern Pac. Co. v. Bogert, 39 S. Ct. 533, 250 U. S. 483, 63 L. Ed. 1099; Jones v. Missouri-Edison Electric Co. (C.C.A.) 144 F. 765. Other courts have recognized that the majority group are not technical trustees, but have declared them

to occupy a fiduciary relation toward the minority: Rothchild v. Memphis & C. R. Co. (C.C.A.) 113 F. 476. 'While in a narrow and restricted sense it cannot be said that the holder of the majority of the stock of the corporation occupies a relation of trust, yet it can be said in a larger and broader sense that he occupies a fiduciary relation to the holders of the minority stock and the corporation, who can only act through him. In the broader sense the holder of the majority of the stock owes to the other stockholders and the corporation the duty to exercise good faith, care, and diligence to conserve the property of the corporation and to protect the interests of the minority stockholders, and any act of his, in dealing with the property of the corporation, in violation of this duty, for his own selfish interests and gain, will not and cannot be recognized.' : Heffern Co-op. Consol. Gold Min. & Mill. Co. v. Gauthier, 193 P. 1021, 22, Ariz. 67, 69, 70."

In *Halpern v. Grabosky,* 296 Pa. 108, we said: "Majority stockholders cannot deliberately take hold of what is apparently a losing venture, and, with figures fixed for its assets under false estimates of value, sell it when they know that in the process of reasonable business management these assets and the business would shortly be much more valuable. The sale is always a question of *good faith; the determination of value is through the application of common sense to the thing to be sold.* To the value as of the time of sale will be allowed a reasonable estimate for future prospects; particularly is this so when it is demonstrated at the time of hearing that those future values were in time reasonably certain." (Italics supplied.) In *Balliet v. Brown,* 103 Pa. 546, 554, this court said that "the directors of a corporation have no right to sell or dispose of its movable property where this prevents the continuance of their business; such a sale made by them is void as against non-assenting stockholders." Fletcher Cyclo-

pedia Corporation, Vol. 6, Ch. 36, section 2947, says: "The general rule is that a corporation has no power to sell and convey the entire property of the corporation, and discontinue its business, against the dissent of the minority stockholders, if the sale is not required by the exigencies of its business." (Citing numerous cases, including *Balliet v. Brown,* supra; *McCurdy v. Myers,* 44 Pa. 535; *Hempstead v. Meadville Technological School,* 284 Pa. 147, 130 A. 421.) In Fletcher Cyc. Corps., Vol. 6, Ch. 36, section 2945, p. 1026, appears this statement: "The courts seem to be substantially a unit in recognizing the power where the exigencies of the business make an alienation or transfer of the whole corporate property and assets necessary or advisable, and in some jurisdictions the power to do so regardless of business necessity or exigencies is recognized, although the majority rule seems to be the other way."

Cases in Alabama, California, Delaware, Illinois, Iowa, Kansas, Kentucky, Louisiana, Missouri, New Hampshire, New Jersey, New York, North Carolina, Texas and Washington "indicate that the courts will permit majority stockholders to dissolve a profitable corporation according to statute and that minority holders can prevent dissolution only in cases where there is (1) *fraud* or (2) *a 'freezing out' of minority holders with the purpose of continuing the business for the benefit of the majority holders,* or (3) where the dissolution is, in actual effect, a consolidation of two or more corporations contrary to law, or (4) *a sale of assets to the majority holders for an inadequate price:"* (Italics supplied) : 33 Kentucky Law Journal, March, 1945, pp. 150-180, on "The right of minority stockholders to prevent the dissolution of a profitable enterprise."

In *Koehler v. St. Mary's Brew. Co.,* 228 Pa. 648, it was held that under the Act of April 17, 1876, P. L. 30, a corporation has the absolute power to sell and convey its franchises and assets for a price or con-

sideration fixable by the corporation as exercised through the votes of the majority of its stockholders. This case differs, however, from the case at bar in these important particulars. The court below found on sufficient evidence that the proposed sale from St. Mary's Brewing Company to the Elk County Brewing Company was without fraud or collusion and for a sufficient consideration. Furthermore, in that case none of the officers and stockholders of the buying company were officers and stockholders in the selling company. The Supreme Court held that as the findings of fact were warranted by the evidence they would not be disturbed.

In *Maxler v. Freeport Bank et al.*, 275 Pa. 510, the question involved was the right of the state banking corporation to dispose of its property notwithstanding a dissent by its stockholders. We said in that case, quoting from 7 R. C. L. 571: "A corporation has full power to alienate its property, both real and personal, unless restricted by its charter. Ownership of property, whether real or personal, carries with it the same general power of disposition in corporations as in individuals, except where the power is restrained by statute or by considerations of public policy." We added: "This rule was early recognized in Pennsylvania, and forcefully declared, in a well-considered opinion (Lauman v. Lebanon Valley R. R. Co., 30 Pa. 42, 44), which has been subsequently cited with approval: Koehler v. St. Mary's Brewing Co., 228 Pa. 648; Illoway v. Daly, 65 Pa. Superior Ct. 333." We also added: "In making the sale, the rights of the public are not adversely affected, and those of the plaintiff are amply protected by the bond to insure him payment in cash of a just valuation of the few shares he owns: Barnett v. Phila. Market Co., 218 Pa. 649. . . . It is to be remembered that the interposition of the equity court is to prevent the working of some real injury. No such possibility appears here, and the injunction was therefore

properly refused : Hamilton v. Foster, 272 Pa. 95, 104;
Casinghead Gas Co. v. Osborn, 269 Pa. 395; Oberly v.
Frick Coke Co., 262 Pa. 83; Crawford v. Sullivan, 238
Pa. 142."

In *Ervin v. Oregon Ry. & Nav. Co.*, 27 Fed. 625, it
was held that dissolution of a corporation pursuant to
a preconceieved scheme of the majority stockholders to
acquire the corporation's property and continue the busi-
ness in their own interest was none the less a fraud
"because accomplished by the agency of legal forms."
In that case Judge WALLACE said : "The defendants have
adjusted their own interests on the basis of a consolida-
tion of the two corporations and a continuance of their
business as a joint venture; but they now insist that the
interests of the minority stockholders, who have not
been permitted to participate with them, shall be ad-
justed on the basis of a dissolution and a cessation of
the business which they originally associated together
to conduct. . . . They repudiate the suggestion of fraud,
and plant themselves upon their right as a majority to
control the corporate interests according to their discre-
tion. They err if they suppose that a court of equity will
tolerate a discretion which does not consult the interests
of the minority. . . . It is also of the essence of the con-
tract [of incorporation] that the corporate powers shall
only be exercised to accomplish the objects for which they
were called into existence, and that the majority shall not
control those powers to pervert or destroy the original
purpose of the corporators." *Jones v. Missouri-Edison
Co.*, 144 Fed. 765, was a case in which the holders of a
majority of the stock of a corporation, in pursuance of
a statute, as well as of a preconceived scheme to benefit
themselves at the expense of the minority, had voted
consolidation with another corporation whose stock they
owned. The court (SANBORN, J.) held that the consoli-
dation was a fraud in law upon the minority stock-
holders, an abuse of the fiduciary relation which the

majority stockholders bore to the minority, and was voidable at the suit of the corporation or of a stockholder. It was further held that the general rule regarding the invulnerability of corporate franchises had no application to a suit by a minority stockholder, to avoid for fraud or breach of trust an act of consolidation and to restore to the corporation injured, or to its stockholders, the franchises and property transferred to the consolidated company.

Barrett v. Bloomfield Savings Institution, 64 N. J. Eq. 425, aff'd in 66 N. J. Eq. 431, 54 A. 543, was a suit by a depositor in a savings bank to enjoin the voluntary dissolution of the savings bank for the purpose of transferring its accounts and good-will to a trust company formed by the trustees. In granting an injunction Vice-Chancellor PITNEY said: "They [the trustees] had no more right, by any sort of contrivance, to destroy the entity of the corporation while transferring to themselves its most valuable asset—its good will—than an ordinary trustee of property has to purchase the property himself, though paying a fair price for it." In Theis v. Spokane Falls Gas Light Co., 34 Wash. 23, 74 P. 1004, a stockholder brought suit to enjoin the sale of the property of a corporation and to annul dissolution proceedings alleged to have been taken by the holders of a majority of the stock as a part of a scheme to eliminate the plaintiff as a stockholder, to acquire the corporation's property and continue its operation in their own interest. A motion to enjoin the sale was denied, after which the property was sold and bought by a representative of the majority stockholders and conveyed to a corporation formed in their interest. The plaintiff then filed a supplemental complaint, bringing in the purchasing corporation as a defendant. The Supreme Court reversed the decision of the lower court, and directed judgment not only setting aside the sale, but annulling the dissolution proceedings. In that case the

Supreme Court of Washington said: "The real question to be determined here is, whether or not the statute confers power upon a two-thirds majority of a prosperous corporation to disincorporate and dispossess minority stockholders of their stock by paying them the market price for the same. . . . Under the provisions of this statute, it is the contention of the respondents that an absolute right is given a two-thirds majority to dissolve the corporation whenever they see fit; and the broad ground is taken, that, inasmuch as the corporation is acting within its legal capacity, the court has no right to inquire into the motive which actuated the moving stockholders; that its only concern is to see that the formal legal requirements have been complied with; and such was evidently the theory adopted by the trial court. This, in a sense, is true, and would apply to this case if the actual attempt was to dissolve the corporation, within the meaning of the law. . . . But in this case, all of the elements of dissolution are wanting. The corporation, with a slightly different name, proceeded in the same town, with the same property, the same powers, and substantially the same owners. All the difference is about what was testified by the president of the corporation—that, after the new company was formed, the minority stockholders' interest would be represented by a deposit in the bank instead of stock in the corporation. It might with as much reason be concluded that a man could escape responsibilities by changing his name, and that, by such change, his moral or financial relations with those with whom he was engaged in business under the old name would be affected. It is not enough to say that appellant received all his stock was worth. He embarked in this business, and had a right to stay in the business during the expressed life of the corporation, or until it was dissolved by a fair compliance with the law."

In *Commonwealth T. I. & Tr. Co. v. Seltzer,* 227 Pa. 410, this court refused to permit officers of corporation

A to gain a profit by selling to corporation B a majority of the stock of corporation A which owned certain real estate which corporation B desired to acquire. Certain of the stockholders alleging that the officers had so manipulated the sale of the property as to make a secret and illegal profit to themselves at the expense of their corporation, filed a bill against the president, directors, and other officers of corporation A to recover such profits. This court in an opinion by Justice Mosch-zisker, said: "An officer is but the agent of his corporation, and in all transactions in which its interests are involved he must act for it with unselfish singleness of purpose. If in any such transaction it appears that he has acted against the interest of his corporation, the mere fact that the means used to accomplish the unlawful end would if standing alone be lawful in themselves will not save such officer from responsibility to account for profits thus made by him which otherwise might have gone into the coffers of his corporation. 'The director of a corporation is a trustee for the entire body of stockholders, and by assuming the office, he undertakes to give his best judgment in the interests of the corporation in all matters in which he acts for it, untrammelled by any hostile interest in himself or others; and all secret profits derived by him in any dealings in regard to the corporate enterprise must be accounted for to the corporation': Bird Coal & Iron Co. v. Humes 157 Pa. 278." In scrutinizing the acts of such officers, the court will not heed mere forms when the substance which lurks behind them shows profits from a dealing in the corporation property.

In *Dunnett et al. v. Arn et al.,* Circuit Court of Appeals, Tenth Circuit, 71 F. 2d 912, it was held that where an oil company's president and secretary, controlling a majority of the stock, agreed to sell such stock under contract contemplating that buying corporation would purchase remaining stock and would

absorb the oil company, the transaction was in effect a sale of oil company's assets and a corporate act obligating president and secretary receiving secret profits to account to minority stockholders.

In an article in 2 Minnesota Law Rev. 528, entitled "Power of the Directors and Majority Shareholders to Dissolve a Prosperous Corporation against the Protest of the Minority Shareholders," this statement is made: "There is a growing tendency to hold that the majority stockholders of a corporation stand in a fiduciary relation to the minority. Ervin v. Oregon Ry. & Nav. Co., (1886) 27 Fed. 625, 23 Blatchf. (U.S.C.C.) 517; Chicago Hansom Cab Co. v. Yerkes, (1892) 141 Ill. 320, 30 N. E. 667, 33 Am. St. Rep. 315; Farmers Loan and Trust Co. v. N. Y. etc. R. Co. (1896) 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689; Jones v. Missouri Edison Co. (1906) 144 Fed. 765. But this cannot go to the extent of holding all acts done in their own interests voidable at the election of the minority. The most that should be required of them is that they should not exercise the legal power to which their larger interest entitles them, to secure an advantage to themselves over the minority. But their bona fide action for the best interests of all should not be set aside. White v. Kincaid, (1908) 149 N. C. 415, 63 S. E. 109; Treadwell v. United Verde Copper Co., (1909) 134 App. Div. 394, 119 N. Y. Supp. 112; Bowditch v. Jackson Co. (1912) 76 N. H. 351, 82 A. 1014, L. R. A. 1917 A. 1174. And see dissenting opinion In Re Paine, (Mich. 1918) 166 N. W. 1036 (1039)."

The plaintiff is entitled (1) to information as to the price at which the machinery and parts and other assets were sold at public sale as the property of either Hosiery Patents, Inc., or Arcadia Hosiery Co. and the names of the purchasers thereof; (2) to an opportunity to prove his allegations: (a) that he was informed by defendants' counsel that the improvements covered by the patents

could not be produced at a profit and that the defendants desired to have no further interest in the patents, by which information plaintiff and his counsel were led to believe that neither the defendants nor their agents would compete with him for the purchase of the same at the sale held on August 17, 1945, and thus force him to pay more than he was in sufficient funds to pay in order to regain possession of his patents; (b) that the price paid for the patents and other assets of the corporation was "grossly inadequate," and (c) that "the acts of the defendants David L. Subin, Benjamin Subin, and Emanuel A. Lerman were planned, devised and executed for the purpose of effecting a confiscation of all the corporation's assets for the individual use, benefit and wrongful profit of the defendants, David L. Subin, Benjamin Subin and Emanuel A. Lerman, who, as officers and directors of Hosiery Patents, Inc., stood in a fiduciary relationship thereto." * If these allegations

---

* In Vol. 40, Columbia Law, pp. 220-251 (February 1940) in an article entitled "Remedy for Corporate Abuse" this statement is made: "A large part of the world's business is now conducted through the medium of corporations. Most corporations are operated honestly. However, the occasional employment of the corporate device as an instrument of fraud to plunder the corporation and its stockholders has necessitated legal controls to prevent, discourage, and redress frauds by directors, officers, or unscrupulous majorities. . . . It would seem that a court of equity requires no special statutory authority to be able to administer corporate assets which its trustees threaten to waste or to take from all to give to some."

In 40 Harvard Law Review 996, in a discussion of the right of holders of non-voting stock to vote on the question of dissolution, this statement is made: "These statutory provisions for dissolution have been strictly construed to prevent any undue encroachment on the right of the stockholder to a voice in the disposition of his property. The courts have refused to allow the majority to exercise their statutory privilege above the protest of the minority unless they were acting in good faith and unless the interests of the minority were not injured thereby." See also University of Pennsylvania Law Review Vol. 94, No. 4, p. 412.

are sustained, plaintiff should be given appropriate equitable relief.

Decree dismissing bill reversed. Bill reinstated, costs to abide the event.