WILLIAM DESTER, ASSIGNEE, v. ALFRED F. ROSS ET AL.

*Railroad companies—Reorganization—Contract—Specific performance—Rights of third parties.*

1. After the confirmation of the sale by a receiver of a railroad, a reorganization is authorized under How. Stat. § 3314.
2. The bill in this case, to which a general demurrer was interposed, is held to make a case for equitable relief; which case

involves the cancellation of certain railroad bonds and the discharge of mortgages, etc., and the enforcement of a contract for the reconstruction of the road, by means of which complainant's assignors acquired certain equitable rights. See opinion for full statement of facts.

Appeal from Berrien. (Buck, J, presiding.) Argued February 6, 1891. Decided April 24, 1891.

Bill to compel the discharge of certain mortgages. Defendants appeal. Demurrer overruled. The facts are stated in the opinion.

*Marshall L. Howell* and *George S. Clapp*, for complainant, contended:

1. Creditors who have advanced money in reliance upon a contract between other parties have an equity in its enforcement; citing *Langdon v. Branch*, 37 Fed. Rep. 449; and the rule that one claiming under a contract to which he is not a party cannot sue upon it is a rule of law, and not of equity; citing *Crawford v. Edwards*, 33 Mich. 354, 360; *Hicks v. McGarry*, 38 Id. 667; and it is not much different in some respects from the doctrine of subrogation; citing *Smith v. Austin*, 9 Mich. 465; *Lucking v. Wesson*, 25 Id. 443; *Smith v. Rumsey*, 33 Id. 183; *Insurance Co. v. Aspinall*, 48 Id. 238; *Donovan v. Dwyer*, 57 Id. 561.[1]

*Edward Bacon*, for defendant Ross, contended:

1. The court erred in disregarding the legal proposition that no inferences or facts not well pleaded were admitted by the demurrers; citing *Dubois v. Hutchinson*, 40 Mich. 262; *Thayer v. Arnold*, 32 Id. 341; *Railroad Co. v. Palmes*, 109 U. S. 253; *Wilson v. Gaines*, 103 Id. 417; *United States v. Van Auken*, 96 Id. 369; *Railroad Co. v. Horan*, 131 Ill. 288.

2. The court disregarded the legal proposition that the appellant mortgagees were entitled to insist that the sixteen bonds and the mortgage securing the same must be of the nature and description required by the contract; citing *Blackwood v. Brown*, 29 Mich. 483; *Jenness v. Shaw*, 35 Id. 21; *Feustmann v. Estate of Gott*, 65 Id. 597; *Norrington v. Wright*, 115 U. S. 209.

---

[1] See *Bush v. Wadsworth*, 60 Mich. 255 (note).

3. On no theory of this case can the complainant be entitled to the discharges lying in *escrow* without making and offering the sixteen $1,000 bonds, secured by first mortgage for a sum not exceeding $50,000, to secure not exceeding five bonds like the sixteen for every one of the ten miles between the villages of Buchanan and Berrien Springs. The contract required that every bond should hold as security one undivided fiftieth of all the property mortgaged, and that this security should be by first mortgage, available to the bondholder in the ordinary manner that a first mortgage secures every one of a number of bonds or notes; citing *Cooper v. Ulmann*, Walk. Ch. 251; *McCurdy v. Clark*, 27 Mich. 448.

4. No such mortgage or bonds have been made or offered. The form of all the bonds made and to be made is given in the mortgage. They are negotiable, being made payable to the American Loan & Trust Company or bearer. Every bond shows that there might be ten of them, instead of five, issued for every mile of railroad completed so that cars may be run thereon. The whole number of bonds issued or to be issued is left entirely uncertain, the only words on the subject being "from one upward, all equally secured." Of course there could be *bona fide* purchasers for any bond, however high in number, and such purchasers could claim all the rights and favors assured by the latest decisions; citing *Ellsworth v. Railroad Co*, 98 N. Y. 553; *McMurray v. Moran*, 134 U. S. 150, 158.

5. The appellant mortgagees, as soon as the existing sixteen bonds were placed in *escrow*, could see that the mortgage referred to in them was not with them as the contract required, and had been recorded by the railroad company without authority from Charles A. Johnson or any of the appellants. This mortgage and the bonds are of the same date, mutually refer to each other, and must all be read together; citing *Stuart v. Worden*, 42 Mich. 160; *Dudgeon v. Haggart*, 17 Id. 280.

6. There was no statute or decision of court authorizing Jonas J. Burns to purchase at receiver's sale, as he contracted to do, and as the bill alleges he did, all the corporate franchises of the St. Joseph Valley Railroad Company. No more could be acquired at such a sale than at an ordinary sheriff's sale under execution levied upon all that was sold; citing *Hackley v. Mack*, 60 Mich. 604; and the authority for mortgage sales and reorganization thereon did not include receiver's sales; citing How. Stat. §§ 3352, 3406.

7. Jonas Burns could acquire no corporate franchises under How. Stat. §§ 3403–3405, and had no power to bid in the old cor-

poration or make a new one, as the bill alleges he did. The alleged corporation mortgagor was not even a *de facto* corporation, because there was no statute under which it could be organized as alleged, and therefore the mortgage was invalid.

*O. W. Coolidge,* for defendants Johnson and the Roughs, contended:

1. The agreement between Burns and the defendants was illegal, and therefore is not susceptible of specific performance through an order of court. The receiver appears from the bill to have had authority to sell only the property and effects of the railroad company, and not its franchises. The bill does not allege that the corporation has been dissolved, or that its affairs have been wound up, and for aught that appears it is still in existence; citing *Railway Co. v. Circuit Judge,* 31 Mich. 456; *Cady v. Manfg. Co.,* 48 Id. 133.

2. The entire franchises and right to be a corporation could not be transferred away by voluntary or involuntary sale so that Jonas Burns, a private citizen, and not being a mortgagee, could obtain the same; citing *Branch v. Jesup,* 106 U. S. 468; *Thomas v. Railroad Co.,* 101 Id. 71; *Gibbs v. Gas Co.,* 130 Id. 411; *Railroad Co. v. Black,* 79 Ill. 262; *Archer v. Railroad Co.,* 102 Id. 493; *Abbott v. Railroad Co.,* 80 N. Y. 28; *Railroad Co. v. Railway Co.,* 86 Id. 107; *Beman v. Rufford,* 6 Eng. Law & Eq. 111; *Winch v. Railway Co.,* 13 Id. 516.

3. It will be impossible to carry out any decree that may be rendered so as to work substantial justice to the parties. The American Loan & Trust Co. is not a party in court, not having been served with process, and not having appeared, being a non-resident. There is no party that can be reached who can discharge the mortgage. Nor can the defendants be placed, by any possible action of the court, where they ought to be by the terms of the contract. The president of the railroad company has departed this country, nearly all of the bonds already issued are held by non-residents, who are not joined as parties, among whom are certain Chicago banks. The judgment of Ross by the contract was to be assigned to Burns personally, and it does not appear by the bill that he has ever assigned or transferred his rights under the contract to the railway company, and he may still have a personal interest in the same, which its creditors cannot seize.

4. Under these circumstances a court of equity will not enforce specific performance or grant the relief prayed for:

   *a*—Courts of equity do not as a matter of course decree specific performance of contracts, but exercise a sound discre-

tion in view of all of the facts in the case, which discretion is judicial, not arbitrary; citing *Smith v. Lawrence*, 15 Mich. 499; *Chambers v. Livermore*, Id. 381; *Rust v. Conrad*, 47 Id. 449; *Chapman v. Morgan*, 55 Id. 124.

*b*—An equity court will not decree the specific performance of an illegal contract; citing *Quirk v. Thomas*, 6 Mich. 76; *Bank v. Niles*, Walk. Ch. 99; *Chamberlin v. Darragh*, Id. 149.

*c*—If the contract is unequal, if its consideration is inadequate, if it contains unreasonable provisions, or if there are indications of overreaching or unfairness, a court of equity will refuse to interfere for specific performance, and leave the party to his remedy at law; citing *Rust v. Conrad*, 47 Mich. 449; *Chambers v. Livermore*, 15 Id. 381.

*d*—In this case a decree cannot be made so as to secure substantially all that the parties contemplated by the contract, and therefore a court of equity will not interfere; citing *Bourget v. Monroe*, 58 Mich. 563; and especially will this be so when it is impracticable for a court to undertake to enforce it; citing *Youell v. Allen*, 18 Mich. 107; *Buck v. Smith*, 29 Id. 166; *Hall v. Loomis*, 63 Id. 709.

*e*—Courts will not attempt to enforce performance of part of a contract distinct and apart from other parts; citing *Baldwin v. Fletcher*, 48 Mich. 604.

*f*—The defendants cannot be compelled to accept uncertain and doubtful securities when the contract fixed certain ones; citing *Powell v. Conant*, 33 Mich. 396.

*g*—The case is one where, even if the court should grant a decree, the party might nullify its action, and therefore it will not be granted; citing *Rust v. Conrad*, 47 Mich. 449.

McGRATH, J. This is a bill filed by William Dester, assignee of Reeves, Patterson & Co., against Alfred F. Ross, cashier of the F. & M. Bank of Buchanan, and William R. Rough and Ed. M. Rough, executors of George H. Rough, deceased, Charles A. Johnson, Jonas J. Burns, the St. Joseph Valley Railway Company, and the American Loan & Trust Company, to compel the discharge of two certain mortgages executed by the St. Joseph Valley Railroad Company, and held by Alfred F. Ross, and William R. Rough and Ed. M. Rough as executors. A general demurrer was interposed by the said mortgagees and said Charles A. Johnson, which was

overruled by the court below, and said defendants appeal.

The bill alleges that the St. Joseph Valley Railroad Company became insolvent in 1886, and passed into the hands of a receiver. It had operated a narrow-gauge road between Buchanan and Berrien Springs,—a distance of ten miles. Two mortgages had been given by it, each for about $20,000,—one in November, 1880, to the defendant Alfred F. Ross, and one in January, 1883, to George H. Rough. George H. Rough is now deceased. Ross has assigned an undivided one-half of his mortgage to William R. and E. M. Rough, and the latter have assigned to Ross an undivided half of their mortgage. On April 20, 1889, all that remained of the property and effects of the St. Joseph Valley Railroad Company was 10 miles of unused right of way, the road-bed, and the iron rails thereon. On April 20, 1889, the defendants Ross and the Roughs, as parties of the first part, and Jonas J. Burns, party of the second part, entered into a written agreement, by the terms of which Burns was to bid in the title, rights, franchises, and property of the said railroad company at the receiver's sale thereof, which had been fixed for May 7 following; that within 30 days thereafter he would rebuild and reconstruct said road as a standard-gauge road, and within 90 days the same should be finished and in operation between Buchanan and Berrien Springs. In consideration of the premises, the parties of the first part agreed to execute and place in the hands of defendant Johnson discharges of · the mortgages held by them, and also of a judgment which defendant Ross held. In consideration of these releases, Burns agreed that a mortgage executed by the legal corporation then owning said road, for the sum of $50,000, should be placed thereon, to secure 50 bonds of $1,000 each, running 30 years, at 5 per cent., and that 16 of said bonds should be delivered to said Johnson, 8 for said Ross, and

8 for the Roughs. The receiver's sale was had, and Burns bid in all the said railroad property, franchises, etc., and received a conveyance thereof. A new corporation was formed, to be known as the "St. Joseph Valley Railway Company," to construct and operate said road from Buchanan to Berrien Springs, and to extend the same southerly to South Bend, Ind., and northerly to St. Joseph or Benton Harbor; and the title to all the property acquired at said receiver's sale was conveyed by Burns to said new company. Within the 90 days named in said agreement the said road had been reconstructed as a broad-gauge road, at an expense of about $30,000, and regular trains were running thereon, carrying passengers and freight between Buchanan and Berrien Springs.

At a meeting of the stockholders of said company held August 1, 1889, the following preamble and resolutions were unanimously adopted:

"Whereas, it is necessary for this company to borrow money or pledge its credit for the purpose of securing money to construct and complete its road; therefore be it—

"*Resolved*, that the board of directors are hereby authorized, empowered, and directed to execute a mortgage covering all the property of the company in the State of Michigan in a sum not exceeding $10,000 per mile of completed road, and to issue bonds of this company, secured by said mortgage, from time to time, as may be proper and necessary, of the denomination of one thousand dollars each, bearing 5 per cent. per annum interest, payable semi-annually, and running 30 years from date, which said mortgage and bonds shall bear date of August 1, 1889. It is further—

"*Resolved*, that the amount of bonds to be issued on the railroad of said railway company between the villages of Buchanan and Berrien Springs be limited to fifty thousand dollars ($50,000), and that no further sum shall be issued on the aforesaid portion of the railroad of the said railway company without the consent of all the holders of the aforesaid bonds, numbered one to fifty, inclusive. And be it further—

"*Resolved*, that the American Loan & Trust Company be, and is hereby, made the trustee of said mortgage."

Pursuant to authority conferred by said resolutions, the board of directors, on August 1, 1889, executed and delivered to the American Loan & Trust Company of New York, as trustee, a mortgage upon all the property of said railway company, and all further extensions thereof, without specifying the amount for which given, but providing that it was to secure bonds to be certified and issued by said trustee to said railway company, "not exceeding at any time, in either certification or delivery, $10,000 for each mile of such railroad completed so that cars may be run thereon," and further providing that the said bonds should be certified and issued only " upon the written application of the railway company, expressed through a resolution of its board of directors or its executive committee, adopted at a regular meeting, or at a special meeting called for that purpose." One hundred bonds were printed, but 50 of which have been certified and issued. Sixteen of said bonds have been delivered to Charles A. Johnson under said agreement. The said Ross and the said William R. and Ed. M. Rough have executed and delivered to said Johnson discharges of the aforesaid mortgages, but have refused to accept said bonds, and have directed said Johnson not to deliver to the St. Joseph Valley Railway Company the discharges of said mortgages.

The bill further sets forth that, after the execution of the aforesaid agreement between said mortgagees and said Burns, the latter applied to Reeves, Patterson & Co., complainant's assignors, for moneys with which to reconstruct the said road, and that said Reeves, Patterson & Co., relying upon the performance of said agreement by both parties thereto, advanced the sum of $20,620, which moneys were used in the reconstruction of said road; that

because of the furnishing of said moneys, and the refusal of the said mortgagees to discharge said mortgages as agreed, the said Reeves, Patterson & Co. became embarrassed financially, and indebted to banking houses at Chicago and elsewhere, and finally made an assignment to complainant; that, to secure said Reeves, Patterson & Co., certain of said bonds were delivered to them, and others were purchased by them, and all of said bonds so issued and all so purchased, aggregating in amount $34,-000, were hypothecated by said Reeves, Patterson & Co. to secure their creditors; that the 50 bonds printed, but not certified by said trustee, as aforesaid, have not been used, but are in the safe of the said Reeves, Patterson & Co., and can be surrendered to be destroyed if the court shall so order; that no attempt has been made to negotiate said 50 bonds, except that some negotiations have been had with said Ross and the Roughs, whereby a few of them could be used, but the negotiations fell through; that, since the appointment of complainant as assignee, he has prosecuted said claim to judgment against the St. Joseph Valley Railway Company, upon which an execution has been issued, which has been levied upon all the property of said railway company; that if the agreement aforesaid is carried out, and said mortgages discharged, complainant will be able to pay in full all the creditors of said Reeves, Patterson & Co., otherwise he will not be able to pay more than 10 or 15 cents on the dollar of that indebtedness; that a large amount of aid has been pledged to said railway company, and in case said mortgages are discharged, the bonds issued, and the said contract performed according to its terms, that the said railway company will be able to pay the aforesaid judgment and the bonds in full; that said Reeves, Patterson & Co. were not aware that the said mortgage was for more than $50,000, but always understood that the said Burns and

the new company organized by him were carrying out said agreement according to its terms.

Complainant asks that the $50,000 in bonds that have not been certified be delivered up for cancellation; that the railway company may be enjoined from issuing any other or further bonds than the $50,000 upon said 10 miles of road already certified, except with the consent of all of the holders of said bonds; that said company and said Burns may be required and decreed to perform the aforesaid contract; that the mortgagees aforesaid may be ordered to discharge the said mortgages; that said Charles A. Johnson be directed to deliver over to said mortgagees the 16 bonds in question; and that the American Loan & Trust Company be directed to certify no more bonds, except upon order of the court.

This is not a proceeding between two parties to a contract, the one seeking specific performance against the other. Other equities have intervened. Reeves, Patterson & Co., relying upon the contract in question, advanced large sums of money, which have been expended in carrying out the provisions of the contract, and in enhancing the value of the road, and also of the securities which Ross and the Roughs were to receive under the contract. Ross and the Roughs are creditors under the agreement in the sum of $16,000, and Reeves, Patterson & Co. are creditors for cash advanced in the sum of $20,000. Complainant does not seek to deprive either party of any rights under the contract, but asks that both be compelled to do that, relying upon the performance of which, Reeves, Patterson & Co. advanced this large sum of money. It would be grossly inequitable now to allow Ross and the Roughs to retain the benefit of this expenditure. With the capital furnished by Reeves, Patterson & Co., the agreement, so far as it relates to the construction of the road, has been fully

performed, and the only part of the agreement which is unperformed is that which relates to the form of the mortgage given to secure the bonds. The court has before it the trustor, the trustee, the parties to the original contract, the holders of the mortgages which it is sought to discharge, and the party with whom the 16 bonds and the releases were deposited in escrow. The trust mortgage and the uncertified bonds are within reach of the court. The bill makes a case for equitable relief, and the court may make such a decree as will preserve the rights and equities of all' parties.

Objection is made that the organization of the new company was without authority of statute; but the receiver's sale was had under an order of court, and was confirmed by the court. The reorganization, therefore, was fully authorized by How. Stat. § 3314.

The demurrer is overruled, and the record will be remanded, and appellants will have 20 days within which to answer, with costs of this Court to complainant.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. LONG, J., did not sit.