(134 App. Div. 394.)

TREADWELL v. UNITED VERDE COPPER CO. et al.

(Supreme Court, Appellate Division, First Department. November 5, 1909.)

1. CORPORATIONS (§ 388*)—ULTRA VIRES ACTS—ACTION BY STOCKHOLDER.

A stockholder cannot sue a corporation on his own behalf for alleged ultra vires acts in reorganizing the corporation, not alleged to be either mala prohibita or mala in se, where he himself, with knowledge of the character of the acts, has accepted pecuniary benefits thereunder, by either turning over his stock in the former company to another person, to be exchanged for stock in the new one, or by selling it to the other person for that purpose.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1562–1564; Dec. Dig. § 388.*]

2. CORPORATIONS (§ 576*)—STOCKHOLDERS' ACTIONS—REORGANIZATION.

In an action by a stockholder to set aside the reorganization of the corporation and have a resale of the property and distribution thereof to the stockholders, where for a long time prior to the trial the corporation had been prosecuting its business profitably, and plaintiff's allegation of mismanagement of the old corporation was not proved, and his allegation that the reorganization and sale were for the purpose of "freezing out" the minority stockholders was disproved, and it appeared that all of the stockholders, except plaintiff, who held about a $1/4000$th part of the stock, were satisfied with the plan of reorganization, a resale will not be ordered, where the corporation offers to deliver to plaintiff shares in the new corporation equal in number to those he held in the old corporation, with accrued dividends and interest thereon, and an equal amount of bonds, or cash, if he prefers, with interest, according to the scheme of reorganization.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2306; Dec. Dig. § 576.*]

Appeal from Special Term, New York County.

Action by George A. Treadwell against United Verde Copper Company and others. From an interlocutory judgment for plaintiff, defendants appeal. Reversed and dismissed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

Elihu Root, for appellants.
Charles M. Demond, for respondent.

McLAUGHLIN, J. The defendant United Verde Company, a domestic corporation, was organized in 1883, with a capital stock of $3,000,000, divided into 300,000 shares, of the par value of $10 each. The defendant Clark, from December, 1888, to 1899, held about 95 per cent. of the stock in his own name, and had complete control of the affairs of the corporation. The corporation owned certain mining properties in the territory of Arizona, which under Clark's management had become very valuable. In 1899, and for some time prior thereto, the corporation had been compelled to pay taxes in the state of New York, amounting annually to something like $38,000, and by reason of that fact the directors, in that year, determined that it was for the best interest of the stockholders to dissolve the New York corporation and continue the business by means of a new corporation

of the same name to be organized under the laws of the state of West Virginia. The plan proposed by the directors, which was communicated to all the stockholders, was that the new corporation was to have the same capitalization as the old, and its stock was to be issued to the old stockholders share for share, thus giving them exactly the same interest in the new corporation that they had in the old. It was also deemed advisable to divide among the stockholders of the old corporation $3,000,000 of accumulated surplus, and, as a means of making such division, it was proposed to have the new corporation issue its unsecured bonds to that amount, and the stockholders, upon exchanging their shares in the old for shares in the new, were to receive such bonds to the par value of their shares, or, if they preferred, the same amount would be paid in cash. In accordance with this proposed plan, which was subsequently carried out, the old corporation was in October, 1899, dissolved; 299,099 shares of its stock being voted in favor, and only 700 against, the dissolution. The 700 shares were those held by the plaintiff, and he was the only stockholder, so far as appears, who ever protested or objected to the carrying out of the proposed plan. The West Virginia corporation was organized, and the property and assets of the New York corporation were, after its dissolution, advertised for sale, and in November, 1899, the plaintiff, then being the owner of 673 shares, commenced this action, alleging that the affairs of the New York corporation had been grossly mismanaged in the private interests of the defendant Clark and others; that they had tried to compel him to sell his stock at an inadequate price; that the proposed reorganization was for the purpose of depriving the minority stockholders of their rights; that the proposed sale of the property and assets of the New York corporation was not to be made in good faith, and, if permitted, would result in great damage to him. The relief asked was the appointment of a receiver, an injunction forbidding the proposed sale and the doing of any further business, an accounting by the directors of the affairs of the corporation since 1888, an inspection of the mines and books of the company, that its property be sold under the direction of a referee appointed by the court, and that the plaintiff be paid his proportionate share of the proceeds derived from such sale.

After the commencement of the action the plaintiff obtained an injunction forbidding the sale, pending the return of an order to show cause why it should not be continued during the pendency of the action. Subsequently the application to continue the injunction was denied, and the one theretofore granted vacated. Thereupon the plaintiff appealed to this court, but before the appeal was determined, and on the 9th of January, 1900, all of the property and assets of the corporation were sold to the defendant MacDonald for $500,000; he buying the same in behalf of the reorganization committee and immediately thereafter transferring the same to the West Virginia corporation. This court subsequently reversed the order vacating the injunction, which the plaintiff had obtained, and continued it. 47 App. Div. 613, 62 N. Y. Supp. 708. Immediately following the sale the plaintiff, together with other stockholders, was notified that it had been made, and that he must deposit his stock with the reorganization com-

mittee on or before February 9, 1900, if he wished to exchange it for the stock and bonds of the new corporation; that otherwise he would only be entitled to his share of the amount realized upon the sale, $1.67 per share, and of the cash assets, $2.75 per share. After receiving this notice, and on February 9, 1900, or a few days prior thereto, he indorsed in blank and delivered 600 of his shares to one Myra B. Martin, who exchanged them in accordance with the proposed plan of reorganization for stock and bonds of the new corporation. This left the plaintiff the holder of but 73 shares. He then served a supplemental complaint, setting forth the transfer, and also the fact that a sale of the property and assets of the New York corporation had taken place, and that they had been purchased by MacDonald for the reorganization committee, and transferred to the West Virginia corporation. The relief asked was substantially the same as in the original complaint, except that, instead of enjoining the sale, he asked that the same be declared void. The West Virginia corporation was also made a party, and the supplemental complaint served on it. All of the material allegations of the complaint, except the dissolution of the New York corporation, the organization of the West Virginia corporation, the sale by the former of all its assets, and the purchase of the same by the latter, were put in issue by the answers of the defendants.

Upon the facts as disclosed at the trial the learned trial justice reached the conclusion that the charges of mismanagement of the New York corporation had not been proved; but, as appears from his opinion, relying upon the former decision of this court, he held that the sale was illegal and void, and for that reason should be set aside; that the West Virginia corporation and its directors should return all the property of the old corporation and account for the same; that the directors of the old corporation should account for all of the corporate property and its management since December, 1888; that all of the property should be resold, and the proceeds derived therefrom distributed among the stockholders of the New York corporation. An interlocutory judgment was entered to this effect, from which all of the defendants appeal.

Applying the principle laid down in Wormser v. Metropolitan St. Ry. Co., 184 N. Y. 83, 76 N. E. 1036, 112 Am. St. Rep. 596, to the conceded facts in this case, I do not see how this judgment can be sustained. It was there held that, where the objection to the acts of a corporation is that they are ultra vires without being either mala prohibita or mala in se, a stockholder cannot maintain an action in his own behalf based on such objection, where he himself, with knowledge of the character of the acts, has acquired and accepted pecuniary benefits thereunder. After the dissolution of the New York corporation, and after all of its property had been sold and acquired by the West Virginia corporation, the plaintiff transferred 600 of his shares to one Myra B. Martin, who was an officer in several corporations in which he was interested, and was secretary, according to his own testimony, of "my George A. Treadwell Mining Company." She was also a clerk in the office of Mr. Demond, his counsel, and was the notary public before whom the complaint, supplemental complaint,

and two affidavits, which were introduced in evidence, were verified. With reference to the transfer she testified:

"I know the plaintiff, Prof. Treadwell, very well. I have known him about 12 years. I am an officer in some of the corporations in which he is interested. In February, 1900, Prof. Treadwell handed me some certificates of stock in the United Verde Copper Company of New York, indorsed by him in blank. I took them to the company's office and exchanged them for stock in the new United Verde Copper Company of West Virginia. I got an equal amount of shares of stock, and also for every share of the stock a bond. The number of shares for which he gave me certificates was 600."

The defendants allege that this transfer was colorable only, and the plaintiff was in fact the real owner of the stock in the new company and received the dividends thereon. The plaintiff himself testified that he sold the stock to Miss Martin and got "an adequate price" for the same. What he considered an "adequate price" does not appear, nor does it appear how or in what manner he was paid. Miss Martin, it will be noticed, says that the plaintiff handed her the certificates indorsed in blank, and she took them to the corporation's office and had the exchange made. It is certainly very significant that the plaintiff, on nearly the last day when an exchange could have been made under the notice previously sent out, if the sale were in good faith, should have sold so large a proportion of his holdings (retaining only 73 out of 673) to a business associate, a clerk in the office of his counsel, and that she should have immediately taken advantage of the opportunity to exchange them for stock in a corporation, when, if the plaintiff succeeded in this action, that corporation would be deprived of all its property. If this was not a bona fide sale of his stock, then the plaintiff clearly, under the decision referred to, is not in a position to attack the reorganization, for he has received the pecuniary benefits of the very plan which he attacks. If it was a bona fide sale, I think the same conclusion follows, because it cannot be seriously doubted, from the relation of the parties to the transfer, that Miss Martin bought the stock for the very purpose of having it exchanged, and that the plaintiff knew it, and sold it to her for that purpose. That was then its only value, except an interest in the result of this action, which the plaintiff, by retaining the 73 shares, proposed to carry on. So far as the real nature of the transaction is concerned, the plaintiff might just as well have exchanged the stock himself, and then sold the stock and bonds of the new company, and if he had done that the case would fall directly within the Wormser Case.

But I do not care to place my opinion that the judgment should be reversed solely upon this ground. The action is in equity, and its determination must be governed by equitable principles, having regard, not to the interest of the plaintiff alone, but to all of the parties interested. The fact that this court, on the prior appeal, held that the sale should be enjoined, is not controlling, nor does it in any way affect the question as now presented. At that time, under section 57 of the stock corporation law (Laws 1890, p. 1078, c. 564), as added by Laws 1896, p. 994, c. 932, and amended by Laws 1900, p. 1621, c. 760, when the New York corporation was dissolved, the plaintiff had a

right to have the business of the corporation wound up and its property sold in good faith by the directors, and to share proportionately, according to his stock, in the proceeds. When the order which was there under consideration was made, the sale had not taken place, and the burden of the plaintiff's complaint was that the reorganization and sale were for the purpose of depriving him, a minority stockholder, of the value of his stock. But at the time of the trial the sale had been made, a reorganization had been brought about, and the new corporation was then, and for a long time prior thereto had been, prosecuting its business in a highly profitable way. Not only this, but the plaintiff's allegation of mismanagement of the old corporation was not proved, and his allegation that the reorganization and sale were for the purpose of "freezing out" the minority stockholders was disproved. It then appeared that all of the stockholders, except the plaintiff, who held about a $1/4000$th part of the stock, were entirely satisfied, and had exchanged their stock in accordance with the plan of reorganization. The dissolution having been accomplished, the sale having been made, and about $3999/4000$ths of the stockholders satisfied with what had been done, it would be unjust and inequitable to them, at the behest of one holding only about $1/4000$th, to wipe out all that had been accomplished and destroy a going and profitable concern, by ordering a resale of the property. The plaintiff's position, in now insisting upon such sale, taking into consideration its necessary result and the expense attending the same, does not commend itself to, and cannot receive the sanction of, a court of equity.

The defendants in their answer, and at or near the conclusion of the trial, offered to deliver to the plaintiff an equal number of shares in the Virginia corporation to what he had in the New York corporation, together with the dividends that had been declared thereon and interest on such dividends, and bonds or cash equal to the par value of such shares, with interest, or, if he preferred, the value of such shares, such value to be determined as the court might direct. The plaintiff, through his counsel, then announced that he would accept the proposition, if, in addition, he were tendered $2,500,000 in cash, representing the proportionate amount he was entitled to receive by virtue of the misappropriation of the funds of the corporation. The real purpose of the action was thus disclosed. It was to recover money or property claimed to have been wrongfully appropriated by the defendant directors. The proof introduced at the trial failed to establish that any property had been misappropriated. The court expressly found that the defendant Clark acted in good faith in all contracts made in behalf of the New York corporation, and that neither he nor any of the directors received any secret profits through their relation with the corporation.

The case in some respects is quite similar to that of Drake v. New York Suburban Water Company, 36 App. Div. 275, 55 N. Y. Supp. 225. There a minority stockholder sought to have a foreclosure sale set aside, and Mr. Justice Cullen, who delivered the opinion of the court, said:

"We are further of the opinion that, under the circumstances of this case, the plaintiff should not, either in this action or by motion in the foreclosure

suit, be permitted to set aside the sale of the property to its present owner, the New York Suburban Water Company, unless that company refuses to pay the plaintiff the fair value of his interest in the property. The plaintiff is the holder of but 10 shares of the capital stock of the consolidated company, of 2,000 outstanding. In other words, his aliquot interest in the property was a 1/200th part. * * * The plaintiff is the only stockholder who seeks to avoid the transactions of which he complains. He is appealing to a court of equity, whose first rule is that he who seeks equity must do equity. * * * If this foreclosure suit is set aside, and the judgment opened, the parties will be remitted to a litigation that may last for years before it is finally composed. The expense of such a litigation would be many times the value of the plaintiff's interest. By enforcing such a litigation, the plaintiff can subject the parties to this expense, or compel them to buy him out at an exorbitant price. We do not think he should be allowed to take such a course. * * * When he stands simply on his legal rights, and proceeds in a court of law, he may be entitled to the benefit of that course, however much wrong it may inflict on innocent parties; but, when he finds himself compelled to appeal to equity for relief, a different rule should prevail. He should be entitled merely to full indemnity."

The defendants, at the trial, as we have already seen, offered to deliver to the plaintiff 73 shares of stock in the Virginia corporation, together with the accrued dividends and interest thereon, and an equal amount of bonds, or cash, if he preferred, with interest. Under section 57 of the stock corporation law, as amended (chapter 760, p. 1621, Laws 1900), soon after the New York corporation was dissolved, he would have been obliged to have accepted one of these offers, or have taken proceedings as provided in such section to have the value of his stock appraised, and then accepted such value; and upon the facts presented, I think he should do so now.

The interlocutory judgment, therefore, is reversed, and the complaint dismissed, with costs, on condition that the defendants tender to the plaintiff 73 shares of stock in the West Virginia corporation, together with the accrued dividends and interest thereon, and of bonds or cash, at his option, equal to the par value of such shares, with interest, or, at his option, pay to him the value of his shares, with interest, such value to be determined by an appraisal as provided in section 57 of the stock corporation law as amended by chapter 760, p. 1621, Laws 1900; the time of such tender, or, in case of its refusal, when the appraisal shall be made, and the value as there ascertained paid, to be fixed by the order of this court reversing the judgment. Such order to be settled on notice.

INGRAHAM, LAUGHLIN, and SCOTT, JJ., concur. PATTERSON, P. J., concurs on first ground of reversal.