E. G. TILLOTSON, Appellant, v. THE INDEPENDENT
BREWERIES COMPANY, a Corporation, Respond-
ent.*

St. Louis Court of Appeals.    Opinion Filed January 3, 1925.

1. CORPORATIONS: Reorganization: Stockholders: Agreement to Ac-
cept New Bonds in Exchange for Old: Estoppel. Where a stock-
holder participated in the reorganization of a corporation and
signed an agreement to accept new bonds for less amount in ex-
change for old bonds and stocks, held that by consenting to the
reorganization agreement he became obligated to deposit such
bonds as he then owned, held or controlled, or afterwards acquired,
for the purpose of carrying out the terms of the agreement, and
that he was estopped to deny the agreement and recover on in-
terest coupons of bonds subsequently acquired.

2. ———: ———: ———: Stockholders and Bondholders Signatures to
Reorganization Agreement: Evidence of Assent and Reliance. Where
an agreement for the reorganization of a corporation shows that
it was entered into in consideration of the mutual interests and
benefits of the parties thereto, and the covenants set forth, wherein
the stockholders and bondholders signed each with the other and
each with all others, held that the signatures to the agreement
were merely unequivocal evidence of assent thereto, and as it would
have been impossible for all subscribers to the agreement to have
signed it at one time, the mere fact that it was not signed at one
time did not show that they did not rely on each other's signatures.

3. ———: ———: ———: Corporation a Party to Reorganization
Agreement: Entitled to Benefits. Where a corporation adopted and
carried out reorganization agreement, whereby stockholders and
bondholders agreed to accept new bonds for less amount in ex-
change for old ones, this constituted the corporation a party en-
titled to claim the benefit thereof, and the contract was made to
that extent for its benefit.

4. ———: ———: ———: Tender: New Securities in Exchange for
Old: Evidence: Sufficiency. Evidence held to show tender of new
securities in exchange for old ones, in accordance with the corpora-
tion reorganization agreement.

---

*(1) Corporations, 14a C. J., section 3615; (2) Corporations, 14a C.
J., section 3607; (3) Corporations, 14a C. J., section 3612; (4) Cor-
porations, 14a C. J., section 3627;

5. ———: ———: ———: ———: **Stockholder Failing to Deposit Securities: Corporation Not Bound to Tender New Securities for Old.** A stockholder, who signed a reorganization agreement requiring stockholders and bondholders to accept new securities for less amount in exchange for old ones, was duty bound to offer to deposit his bonds with depositary, and, not having done so, no duty of tendering new securities rested on the corporation.

6. **INSTRUCTIONS: Conflict: Mere Conflict Does not Require Reversal.** Mere conflict of an instruction given at the request of plaintiff with one given at request of defendant, did not require reversal, where plaintiff's instruction should not have been given because it was not hypothesized on defendant's defense.

7. **EVIDENCE: Letters: Between Reorganized Corporation and Plaintiff: Material to Controversy: Immaterial Matter Harmless: Admissibility.** Letters between a reorganized corporation and plaintiff, suing the corporation on interest coupons detached from mortgage bonds, tending to show that the payment of the coupons was refused; that new bonds had been issued in lieu of the old bonds, which the then alleged owner refused to deposit, etc., *held* that the letters were admissible, and while they may have contained some immaterial matter, the effect was harmless.

ON MOTION FOR REHEARING.

8. **BILLS AND NOTES: Assignee: Notice: Purchaser With Notice from Innocent Holder: Takes Good Title.** One with notice of equities may acquire good title to negotiable paper from a bonafide holder and recover on such paper notwithstanding his knowledge of equities which would otherwise defeat his action.

9. **CORPORATIONS: Reorganization: Parties Participating: Estoppel.** Where plaintiff induced action by others by signing reorganization agreement and by participating in reorganization of the corporation, he was estopped from asserting claim on securities that he held at the time he signed the reorganization agreement or that he afterwards acquired, since estoppel acts not upon the thing but upon the person.

10. ———: ———: ———: **Evidence: Fraud: Sale of Bonds: Not Bona Fide: Effect.** Evidence held to show that the alleged sale by the plaintiff of his corporate bonds to his father was not a bona-fide sale, and that the father became his trustee, and that he therefore owned the bonds when he signed the reorganization agreement and participated in the reorganization of the corporation.

(5) Corporations, 14a C. J., section 3615; (6) Appeal & Error, 4 C. J., section 3186; (7) Appeal & Error, 4 C. J., section 2952; Corporations,

14a C. J., section 2649; (8) Bills & Notes, 8 C. J., section 685; (9) Corporations, 14a C. J., section 3607 (1926 Anno); Estoppel, 21 C. J., section 199 (1926 Anno); (10) Corporations, 14a C. J., section.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Jones, Hocker, Sullivan & Angert* for appellant.

(1)  The reorganization agreement was no defense. The agreement as such was merely an accord. There was no satisfaction. Accord without satisfaction is not a defense on the original indebtedness. Tillotson v. Independent Breweries Co., 236 S. W. 906.  (2)  To constitute satisfaction there must be actual acceptance of the new securities for the old and actual performance of all of the terms of the accord. Mere tender or part performance is not sufficient. Crouch v. Quigley, 258 Mo. 651, 658; Chapman v. Adams, 204 Mo. App. 659; 1 Corpus Juris, pp. 532, 533; Slover v. Rock, 96 Mo. App. 335; Erwin v. Jones, 192 Mo. App. 326.  (3)  Instruction No. 2 given by the court for the defendant was erroneous. It permitted the jury to find a verdict for defendant based on immaterial evidence which constituted no defense and on evidence which did not exist. Instruction No. 2 given for the defendant is also erroneous because it is in conflict with instruction No. 1 given for the plaintiff. State ex rel. v. Ellison, 270 Mo. 645; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 613.  (5)  The court erred in admitting the correspondence in evidence. It was wholly immaterial and could serve only to prejudice the jury. Tillotson v. Independent Breweries Co., 236 S. W. 906.

*Sam B. Jeffries, Arthur E. Simpson* and *Paul F. Plummer* for respondent.

(1)  The verdict found by the jury on conflicting evidence is conclusive on the facts in dispute.  Williams v. Barnes, 253 S. W. 807; Ormsby v. A. B. C. Fireproof Warehouse Co., 253 S. W. 491; Karte v. J. R. Brockman Mfg. Co., 247 S. W. 417.  (2)  Plaintiff remained the owner of the bonds and interest coupons in question at all times from the date of his purchase in 1907.  A person cannot contract with himself even though he endeavors to do so in different capacities.  13 Corpus Juris 262; Watson Seminary Co. v. County Court of Pike County, 149 Mo. 57; Gorham v. Meacham, 63 Vt. 231; Eastman v. Wright, 6 Pick. (Mass.) 316; Darville v. Mancini, 9 Porto Rico (Fed.) 35.  (3)  Even though plaintiff had sold the bonds in question to his father and had repurchased them after having signed the reorganization agreement, he would still be bound to surrender his bonds in accordance with said agreement.  See Reorganization Agreement, sections 1, 5, 21 and 26.  (4)  The reorganization agreement is binding on the plaintiff.  Fletcher on Corporations, p. 8521; First Nat. Bank v. Radford Trust Co., 80 Fed. 569; Symmes v. Union Trust Co., 60 Fed. 830; Dester v. Ross, 85 Mich. 37; Crawshay v. Souter, 6 Wall. 739, 18 L. Ed. 845; Treadwell v. United Verde Copper Co., 134 App. Div. 394, 119 N. Y. Supp. 112; Farmers Loan & Trust Co. v. Central R. & B. Co., 120 Fed. 1006; Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259; Farish v. Cieneginta Copper Co., 12 Ariz. 235; Wodsworth v. Prism Plate Glass Co., 239 Fed. 507; Mills v. Potter, 189 Mass. 238.  (5)  Plaintiff is estopped from maintaining this action by the terms of the reorganization agreement, and also by his conduct in participating in the reorganization of the company under the agreement.  17 Fletcher on Corporations, p. 8523, sec. 4903; Smith v. Paper Co., 101 Kan. 274; 1 Corpus Juris 532; Chapman v. Adams, 204 Mo. App. 662.  (6)  The reorganization agreement should be so construed as to protect the good faith of the parties to it and as not to give one party an unreasonable advantage over the others.  Severing Investment Co. v. Lewis, 200 Mo. App.

679; McCartney v. Trust Co., 274 Mo. 224; Conqueror Zinc & Lead Co. v. Insurance Co., 152 Mo. App. 332; American Hard Wood Lumber Co. v. Dent, 151 Mo. App. 614; Laclede Power Co. v. Stillwell, 97 Mo. App. 258. (7) The organization agreement was for the benefit of the defendant and is available to it as a defense in this action. Central Trust Co. v. Railway Co., 58 Fed. 500. (8) Appellant cannot complain that Instruction No. 1 requested by him conflicts with Instruction No. 2 requested by defendant, since plaintiff was not entitled to a directed verdict. Moran v. Kansas City Railways Co., 232 S. W. 1111; Jourdan v. Sheets, 248 S. W. 641; Stallings v. Missouri Pacific R. R. Co., 251 S. W. 143; Duerkob v. Brown, 255 S. W. 962. (9) The letters written by the plaintiff and offered in evidence were admissible. McCaughan v. John Hill Const. Co., 222 S. W. 917; Brightwell v. McAfee, 249 Mo. 562; Runyan v. Mining Co., 186 Mo. App. 707; Klicoyne v. Metz, 258 S. W. 4.

DAVIS, C.—This is an action, instituted in the justice court, the petition containing twelve counts, on matured interest coupons in the sum of $30 each theretofore attached to bonds issued by defendant. On the cause being appealed to the circuit court, the jury, on a trial *de novo*, returned a verdict for defendant, plaintiff appealing from the judgment entered thereon.

The record, after showing an indemnifying bond for two lost coupons, shows the plaintiff offered in evidence ten interest coupons. Plaintiff, by deposition, testified, in substance, that he was the owner of certain bonds of defendant, identifying them by number, to which the coupons sued for were thereto attached; that he bought the bonds at the original issue in 1907, sold them in 1907 to his father, and repurchased them in 1915, giving his note in payment, putting the note in the box and taking the bonds; that his father was not physically, but was mentally, he thought, capable of doing business; that in selling the bonds to his father, he talked the matter of the purchase over with him; that he repurchased the bonds because he did not want his father to make any

loss; that he merely told his father that he would take the bonds off his hands so that there would be no loss; that his father had knowledge of his putting the note in the box, to which box both had a key; that between 1907 and 1915, coupons, if paid at all, were paid to his father; that plaintiff demanded payment of these coupons, and payment was refused.

Defendant offered and there was received in evidence the Reorganization Agreement of Independent Breweries Company. This agreement tended to show, in substance, that said company had an $8,000,000 authorized bond issue, secured by general mortgage on company property, dated June 1, 1907, an authorized six per cent preferred stock issue of $4,600,000, and common stock issue of $3,400,000; that of the authorized bond issue only $6,833,000 face value were actually issued, of which issue $285,000 of bonds were retired and $88,900 were held by the company and $609,300 were so held to take up and satisfy underlying bonds secured by mortgage; that the company was in default on the bonds and unable to earn funds to pay interest on bonds or dividends or preferred or common stock; that a reorganization of finances was deemed advisable by reducing bonds and stock to preserve the substantial value of its property and business; that in consideration of mutual interest, benefits and covenants, the undersigned stockholders and bondholders of the company, each with the other and each with all others, agreed as follows:

"First. That $5,938,700 face value bonds are to be deposited with a certain bank, for purposes set forth, except $609,300 to satisfy said underlying bonds.

"Second. Outstanding preferred and common stock to be deposited with bank for purposes set forth.

"Third. The National Bank of Commerce in St. Louis appointed depositary.

"Fourth. The Committee named appointed attorneys, with irrevocable power to control bonds and stock deposited; to vote said stock in effecting this agreement; to waive and consent to stockholders meetings.

216 M. A.—27

"Fifth. The Committee authorized to cause forty per cent of outstanding bonds (except underlying bonds) to be surrendered and cancelled and first preferred six per cent stock to be issued in lieu thereof; to reduce the preferred stock from $4,600,000 to $1,500,000 and convert same into second preferred stock, and to reduce $3,400,000 common stock to $1,000,000; the preferred stock to waive accrued, or to be accrued, dividends prior to reorganization.

"Sixth. The committee shall cause $1,167,000 treasury bonds to be surrendered and cancelled as necessary or advisable. If not cancelled, may be used to purchase real estate, plants or properties, or to construct buildings according to terms of mortgage.

"Seventh. The articles of incorporation shall be amended: (a) Preferred stock to receive six per cent cumulative dividends, etc.; (b) second preferred stock subordinate to receive six per cent cumulative dividends, etc.; (c) common stock to receive such dividends as provided herein; (d) the preference of certain stock on dissolution or liquidation as to assets.

"Eighth. The committee to have the right to change, alter and amend the sinking fund provisions of the mortgage, etc.

"Ninth. In the event the proposition to convert 40% of said bonds, etc., be authorized by the company and perfected by the committee, said committee shall distribute the respective bonds and stock as the undersigned may be interested and entitled.

"Tenth. That in the event the bondholders and stockholders do not execute this agreement or deposit hereunder, the mortgage may be foreclosed by the trustees under the direction of said committee; and the bondholders to this agreement empower said committee to waive any and all defaults, etc.

"Eleventh. That the committee is authorized to purchase the property on foreclosure of mortgage for undersigned bondholders and stockholders, etc., with

power to organize a new company, etc., and to distribute new bonds and stock, etc.

"Twelfth. In case of foreclosure and purchase by the committee, all sums borrowed by it, etc., and all sums borrowed or advanced and used in paying the floating debts, etc., shall be paid off, etc., by either, first, the sale of new bonds and stock, etc., or, second, by the sale of bonds superior to the bonds to be distributed.

"Thirteenth. The committee shall determine and prescribe the form of all bonds, etc., and to omit, postpone or waive the performance of any act required by this agreement, etc.

"Fourteenth. Bonds to be distributed hereunder to include all interest coupons belonging to or attached to said bonds, except coupons prior to June 1, 1912.

"Fifteenth. Depositary shall cause certificates of stock deposited to be transferred and new certificates issued in name of committee.

"Sixteenth. Stockholders and bondholders to hold depositary harmless and indemnified, etc.

"Seventeenth. The committee to continue in force while anything remains undone, unless sooner dissolved, etc.

"Eighteenth. The committee personally designated consisting of nine members.

"Nineteenth. Provision for appointing a successor to a member of said committee.

"Twentieth. Provision for a receipt or certificate to a depositor of bonds and stock.

"Twenty-first. Should any person execute this agreement and fail or refuse to deposit his bonds or certificates of stock with the depositary hereunder, the committee shall have the right to, and may, deal with and treat the same as constituting a part of the bonds and stock included in and made subject to the terms and conditions hereof, and may institute such legal proceedings as may be necessary against such person to require a deposit of his securities hereunder.

"Should any bondholder or stockholder subscribe to this agreement but fail to set forth the amount of bonds or the number and kind of shares of stock owned by him, or set forth an incorrect amount or number or kind, it shall be and is understood 'that such execution hereof shall refer to and include all the bonds and shares of stock of the company owned, held or controlled by such subscriber.

"Twenty-second.   Provision relating to compensation of committee and depositary for services and expenses incurred by committee, etc.

"Twenty-third.   Provision in case depositary shall resign.

"Twenty-fourth.   This agreement may be executed by the parties hereto subscribing to written or printed copies or counterparts hereof, and when such copies or counterparts are so executed and deposited with the committee or the depositary for the committee, the same shall together herewith constitute but one instrument.

"Twenty-fifth.   The agreement to be binding on heirs, executors, etc., successors and assigns, and on the respective holders, owners and pledgees.   The receipts to be issued in name of person making the deposit and to be assignable and transferred on the books of the committee, etc.

"Twenty-sixth.   The undersigned holders of bonds and stock of said company do hereby severally, and not jointly, each for himself and not for the other, agree to all the terms hereof, and to deposit forthwith the amount of bonds and stock of said company owned by them respectively with the National Bank of Commerce in St. Louis, to be voted, used, surrendered and exchanged, as set forth in this agreement, and each and every modification, change and alteration hereof; and do hereby empower the committee aforesaid with full and exclusive authority to act for them and in their respective names in the performance of such things as may be deemed by them necessary or expedient in carrying out all of the

provisions of the foregoing agreement, in accordance with the rights of the respective parties hereto.

"IN WITNESS WHEREOF, we have hereunto subscribed our names and set opposite our respective signatures the amount of common and preferred stock and bonds of said company now owned and held by us respectively, and which we hereby agree to deposit forthwith with the National Bank of Commerce in St. Louis for the purposes set forth in this agreement on and as of this 8th day of July, 1912.

| NAME | ADDRESS | BONDS | COMMON STOCKS | PREFERRED STOCK |
|------|---------|-------|---------------|-----------------|
| E. G. Tillotson, | 1000 Guardian Trust Bldg. | | 100 | 113-113 |
| Otis & Hough | | | | 100 |

"The above 100 shares of preferred stock are included in the stock signed for by E. G. Tillotson, the same now appearing of record on the Independent Breweries Company books in the name of Otis & Hough, but the certificate for same having been endorsed by us and sold to E. G. Tillotson."

Defendant's evidence further tended to show that at a stockholders' meeting of defendant, held May 26, 1913, there was present in person or by proxy approximately 400 stockholders representing 45,911.73 shares of preferred stock and 33,911.73 shares of common stock out of the total issue of 46,000 and 34,000 shares, respectively, of preferred and common stock. We think it expedient to set forth in full the resolutions and proceedings of the stockholders meeting of May 26, 1913, as shown by the record, to-wit:

"Mr. C. A. Otis offered and moved the adoption of the following resolution:

"'Whereas certain bondholders and all stockholders of the company under an agreement dated July 8, 1912, having submitted a proposition to reorganize the finances of the company by converting two million five hundred thousand ($2,500,000) dollars par value of the company's preferred stock into two million five hundred thousand ($2,500,000) dollars of first preferred stock, and further

reducing said preferred stock to one million five hundred thousand ($1,500,000) dollars and reducing the common stock of the company to one million ($1,000,000) dollars and surrendering the amount of the company's first and general mortgage bonds dated July 1, 1907, equal in amount of forty (40%) per cent of face value of said bonds now outstanding and to issue in lieu thereof new bonds secured by a new mortgage deed of trust to be exchanged for the remaining sixty (60%) per cent of the outstanding bonds of said issue of June 1, 1907. Which said proposition is fully set forth in the agreement signed by all of the stockholders of the company whereby this meeting is assembled and also in an agreement herewith submitted for execution by this company and which has been executed by authority of the holders of all of the capital stock of this company and the holders of five million eight hundred fifteen thousand ($5,815,000) dollars face value of the bonds of this company bearing date of June 1, 1907, out of the total of five million nine hundred thirty-eight thousand seven hundred ($5,938,-700) dollars par value of said bonds outstanding; and,

" 'Whereas, the said agreement and the proposition therein set forth so submitted on behalf of the bondholders and stockholders of the company is in words as follows:' "

"Whereas, it is, in the opinion of the stockholders of the company, essential that said proposition be accepted in order that the interests of all concerned may be properly protected and that the financial affairs of the company may be placed upon a more substantial and safe basis; now, therefore, be it

" 'Resolved that said proposition as set forth by the terms of said agreement so submitted by the bondholders and stockholders, as aforesaid, be and the same is hereby accepted and said agreement so submitted be and the same is hereby ordered executed for and on behalf of this company by the president and secretary of the company, to the end that said bondholders' and stockholders' agreement of July 8, 1912, and the afore-

said agreement so ordered executed between this .company and the committee representing said bondholders and all of the stockholders of the company may be made effective.'

"Which said motion to adopt said resolution was duly seconded by Mr. H. L. Griesedieck and upon being put to a vote was unanimously adopted, all of the shares of stock of the company being voted in favor thereof, the chairman so declared.

"Mr. M. J. Mandelbaum offered and moved the adoption of the following resolution:

" 'Whereas, in order to comply with the proposition made by outstanding bondholders of the company with the stockholders of the company and in order to comply with the proposition this day submitted by the stockholders and certain bondholders of the company and to fully perfect the same, now, therefore be it

" 'Resolved, that the capital stock of the company be first, reduced from eight million ($8,000,000) dollars to five million ($5,000,000) dollars; second, said capital stock so reduced to be divided into and to consist of first preferred stock, second preferred stock and common stock, classified as follows:

" 'Be it further resolved, that the stockholders of this company shall and they do hereby surrender their present stock and accept in lieu thereof new stock of the priorities, preferences and classification aforesaid. The stockholders to receive one share of new second preferred stock for three and one-fifteenth shares of present preferred stock now held by them, and one share of new common stock for three and one-fifth shares of present common stock held by them; said stockholders do hereby surrender the 25,000 shares of first preferred stock to the holders of and in exchange at par value for the company's present outstanding first and general mortgage bonds dated June 1, 1913, in the manner and to the effect as set forth in the agreement this day authorized executed, and executed between this company and the committee of bondholders and stockholders of this company.'

"Which motion to adopt said resolution was duly seconded by H. L. Griesedieck and on being put to a vote, in the manner required by law, was unanimously adopted. All of the shares of stock of the company being voted in favor thereof and no shares being voted against the same, the chairman so declared.

"Mr. Otis offered and moved the adoption of the following resolution:

" 'Whereas by virtue of its articles of incorporation and laws of the State of Missouri, the Independent Breweries Company is authorized to borrow money and issue its negotiable bonds therefor and secure the payments thereof by a mortgage upon its plants and property:

" 'Resolved, that all of said bonds shall be immediately executed and three million four hundred eighty-nine thousand ($3,489,000) dollars face value of said bonds shall be immediately issued, certified and delivered to the president of the company for the purpose of being delivered to the holders of and in exchange for this company's first mortgage bonds of the issue of June 1, 1907, in full compliance with the agreement this day entered into between this company of the one part and the holder of bonds and the holders of all the stock of this company of the other part.

" 'And be it also resolved, that the further sum of five hundred ninety-three thousand one hundred ($593,100) dollars face value of said bonds be likewise immediately issued, set apart and held by the trustees, or one of them, under the mortgage deed of trust securing said bonds which under the direction of and with the consent of this company shall be from time to time certified and delivered by the trustee only in exchange for and upon the surrender and delivery to it of a like amount of principal of bonds issued and now outstanding under the following mortgage now constituting liens upon portions of the property of the company herein referred to as underlying bonds and underlying mortgages, to-wit:'

"On motion of Mr. Ben G. Brinkman, duly seconded by Mr. M. J. Mandelbaum, the following resolution was unanimously adopted:

" 'Resolved, that all action taken by the officers, directors and the executive committee of the company, as shown by the records and books of the company, be and the same are hereby ratified and approved.' "

Defendant's evidence further tended to show that $5,856,100 face value of bonds were surrendered under the reorganization agreement to the depositary, and in lieu of those bonds, new bonds of the value $3,513,660 and first preferred stock of the value of $2,342,440 were issued.

Defendant offered in evidence a deposition of plaintiff taken February 10, 1916. Plaintiff therein stated, in substance, that he was an investment banker and signed the reorganization agreement as a stockholder; that he was at the time of his deposition the holder of bonds of defendant; that in June, 1907, he purchased 38 bonds, receiving 100 shares of stock for services; that on November 29, 1907, he sold the bonds to his father, but kept the stock; that he repurchased the bonds from his father on July 9, 1915; that his father was a very old man; that age, decrepitude and illness had caused his father to surrender the entire control and charge of his affairs to plaintiff; that plaintiff acted as general agent in the management of his father's business, failing to observe the formality of consulting his father prior to sale of bonds; that his father maintained a box in the Cleveland Trust Company, to which plaintiff had access, and in which he deposited and from which he withdrew papers and documents at will; that the sale consisted of plaintiff depositing the bonds in the father's box and the resale consisted in taking the bonds from his father's box and depositing therein plaintiff's note for $3,496; that his father never received the note himself; that the only way the father ever could have known about the transaction was by reason of plaintiff inform-

ing him; that he did not remember the exact time when he removed the bonds from his father's box; that for a while both the note and the bonds remained in his father's box.

Plaintiff testified as follows: "Q. Let me inquire what you mean when you say your father was unable to do business. A. Why, he was pretty sick. We were very much worried about him, and he dismissed all business matters as quickly as possible. Just what he said, I could not tell. He was physically unable to do business. Q. Was he mentally capable of doing business? A. I don't think he was at that time able to; 81 years old and suffering a great deal of pain, and a very sick man. I don't think he was, but that is merely my impression."

Plaintiff further testified that his father received the proceeds of the coupons as long as they were paid, and he explained this by saying that his father received them by being shown a statement compiled by plaintiff.

Defendant offered in evidence a number of letters from plaintiff, or at his instance, to Mr. Koehler, president of, or Mr. Gast, secretary of, defendant. The purport of the letters is the acknowledgment of a refusal of defendant to pay certain coupons; the acknowledgment of an avowal that old bonds were to be exchanged for new; the refusal of plaintiff or his client to exchange, and the refusal of plaintiff to disclose the name of the real owner of the bonds.

Such other facts as are pertinent will later appear.

I. A similar suit, to collect coupons, clipped from the same or similar bonds, and upon a similar petition, has been before this court and is reported in 236 S. W. 906. In that case the cause was submitted to the court, sitting as a jury, resulting in judgment for plaintiff. This court there held, in substance, that there was no showing that the agreement was ever carried out or signed by any one other than plaintiff, or that the committee ever acted thereunder, or that the agreement was ever executed, or that other obligations were tendered plaintiff in lieu of bonds.

Plaintiff's contention in the instant case is that the reorganization agreement is no defense, for it is merely an accord without satisfaction; that to constitute satisfaction there must be actual acceptance of the new securities for the old and an actual performance of all the terms of the accord; that mere tender or part performance is not sufficient.

The issue of accord and satisfaction is not, in our opinion, presented by the record. The situation before us is very different. The evidence unequivocally demonstrates that plaintiff signed the reorganization agreement, was present by proxy at a stockholders meeting on May 26, 1913, voting in favor of the reorganization resolutions there presented and set forth in our statement of facts, and that he deposited his securities (stocks) in accordance with the reorganization agreement. The above facts present plaintiff as a participator or movent in the reorganization of the company. It is argued, however, that as plaintiff did not own the bonds at the time he signed the reorganization agreement or at the time of his participation in the reorganization movement, and, that, inasmuch as he signed only as a stockholder, his subsequent acquisition of the bonds could not so bind him within the contemplation of the agreement.

Defendant asserts that plaintiff, by executing the reorganization agreement and participating in the reorganization movement, became estopped. It is evident that one who consents to the reorganization of a company, expressly as by signing, or impliedly as by accepting the benefits of the plan, that is where the plan of organization is being or has been evolved, cannot repudiate the agreement and insist upon his original rights. [Fletcher Cyc. Corp., page 8521; First National Bank v. Radford Trust Co., 80 Fed. 569; Symmes v. Union Trust Co., 60 Fed. 830; Treadwell v. United Verde Copper Co., 119 N. Y. Sup. 112, 134 App. Div. 394; Farmers Loan & Trust Co. v. Central R. & B. Co., 120 Fed. 1006; Crawshay v. Souter, 6 Wall. 739, 18 L. Ed. 845; Dester v. Ross, 85 Mich. 37, 48 N. W. 530.]

While plaintiff only listed stocks, it is evident that, considering the whole plan of reorganization, he intended to become personally bound, and an interpretation of the agreement would include, as within it, after acquired stocks and bonds. Plaintiff's assent to the reorganization agreement and the subsequent consummation thereof, are the axes on which this cause turn. Having assented to the plan of reorganization, he may not oppose it, and it would result in opposition were he permitted to acquire outstanding bonds and collect them. Such course would violate both the letter and the spirit of the agreement; the letter, because he has impliedly, at least, agreed to assist in carrying out the reorganization plans; the spirit, because he would obtain an undue advantage over the other subscribers to the agreement. We are not unmindful that the market of plaintiff's vendor for the sale of bonds would, by so much, be limited, but we are unable to see how one may assent to a thing, and later by denial tear down the very thing that his assent caused to be constructed. By consenting to the reorganization agreement plaintiff became obligated to deposit such bonds as he then owned, held or controlled, or afterwards acquired, for the purpose of carrying out its terms. To permit him to deny the agreement and recover on the coupons, would be permitting him to blow first hot and later cold. One ought not to be allowed to play fast and loose.

Says the plaintiff, however, there can be no estoppel, because the evidence fails to show that other stockholders or bondholders relied on plaintiff's signature to the agreement. In that we are unable to concur, for we think the agreement shows that it was entered into in consideration of the mutual interests and benefits to the parties thereto and the covenants set forth, wherein the stockholders and bondholders signed each with the other, and each with all others. The signatures to the agreement were merely unequivocal evidence of assent, and it would have been impossible for all subscribers to the agreement to have signed at one time. The sub-

scribers could not have contemplated such an occurrence. We think the subscribers to the agreement relied upon the signatures of each other, and each with all others, including that of plaintiff.

Says the plaintiff again, defendant is not entitled to the benefits of the reorganization agreement, because it was not a party thereto. The evidence, however, demonstrates that defendant adopted and carried out the agreement as shown by the minutes of the reorganization meeting. This constituted defendant a party entitled to claim the benefit thereof, for the contract was made to that extent for its benefit. [Central Trust Co. v. C. J. & M. Ry. Co., 58 Fed. 500.]

Says the plaintiff further, there was no evidence of any tender by the defendant of the new securities. To that we do not assent, for plaintiff wrote defendant under date of September 2, 1914: "Your letter of August 24th was duly received. I have taken up the question with the present owner of the bonds of which Mr. Milligan wrote you recently, and he refuses to deposit under the reorganization agreement and insists that the coupons be paid promptly." It is evident, from this letter, that plaintiff knew that defendant was tendering new securities to the owner of the very bonds now sued upon. The record shows that the then owner, whoever he was, refused to deposit under the agreement. Under the evidence in this case, we think that such tender of new securities, in lieu of the bonds, was equivalent to a tender to plaintiff. However, the agreement provides that all of the outstanding bonds of the company (except those now held for certain purposes) are to be deposited with the depositary. Plaintiff having signed the agreement, we construe it as incumbent on him to offer to deposit his bonds with the depositary. Not having done so, no duty of tender rested on defendant.

We are of the opinion that plaintiff having accepted some part of the benefits, at least, of the reorganization of defendant, is estopped from maintaining a claim on the original securities, the maintenance of which would

be a violation of his agreement. [Fletcher Cyc. Corp., page 8523, sec. 4903; Smith v. Paper Co., 101 Kas. 274; 1 C. J. 532; Chapman v. Adams, 204 Mo. App. 659, l. c. 662, 219 S. W. 132.]

II. Plaintiff complains of defendant's instruction No. 2, because it permitted the jury to find for defendant based on immaterial evidence which constituted no defense and on evidence which did not exist. We think our discussion as above disposes of this contention.

Plaintiff also complains that defendant's instruction No. 2 is in conflict with plaintiff's instruction No. 1. Plaintiff's instruction No. 1, in substance, permits a recovery, if plaintiff demanded and was refused payment of the coupons. Defendant's instruction No. 2 is based on the assent of plaintiff to the reorganization agreement, the reorganization of the company, and the willingness of defendant's committee to accept plaintiff's security upon deposit, and the refusal of plaintiff to accept certificates in lieu of bonds and coupons owned by him. While the instructions are in conflict, plaintiff's instruction is not hypothesized on defendant's defense, and should not have been given. Defendant's instruction was so hypothesized, and no error is argued except the theory that defendant's evidence constituted no defense.

In Patterson v. Evans, 254 Mo. 293, 102 S. W. 179, it is said: "It is not the mere conflict of instructions which constitutes reversible error. In order for such conflict to work reversal there must be error in some instruction given over the losing party's exception." To same effect: Litchfield Mfg. Co. v. Am. H. L. Co., 237 S. W. 831; Heeter v. Boorum, etc. Co., 237 S. W. 902; Bollinger v. Curtis, etc. Co., 249 S. W. 907. We rule this point against plaintiff.

III. Plaintiff complains of the action of the trial court in admitting in evidence the correspondence between plaintiff and defendant, because it was wholly immaterial and could serve only to prejudice the jury. Plaintiff objected to the letters only on the ground of

immateriality. These letters tended to show that payment of the coupons were refused; that new bonds had been issued in lieu of the old bonds, and that these bonds must be exchanged for the new issue; that the then alleged owner refused to deposit the bonds; that plaintiff had deposited his securities in the reorganization; that the then alleged owner had never consented to the reorganization. We think these letters were generally admissible. While the letters may have contained some immaterial matter, we consider the effect harmless.

The Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.

### ON MOTION FOR REHEARING.

DAVIS, C.—I. In his motion for a rehearing plaintiff says the law is well settled that one with notice of equities may acquire good title to negotiate paper from a bona-fide holder and recover on such paper, notwithstanding his knowledge of equities which would otherwise defeat his action, citing McMurray v. McMurray, 258 Mo. 405, 1. c. 417, and other cases. We assent to the proposition of law above stated, for we think it is well settled to that effect where the rule is applicable. However, we do not think the rule applied to the facts in the instant case. The theory of the defense is estoppel. It is said that estoppel lies at the foundation of morals, and is the cardinal point in the exposition of promises, that one shall be bound by the state of facts which he has induced another to act upon. Plaintiff has induced action by others by signing the agreement and by participating in the reorganization of the company. Estoppel acts not upon the thing, but upon the person, and plaintiff should not be permitted to tear down the structure that he helped erect. This applies to securities that

he held at the time he signed the reorganization agreement or that he afterwards acquired, for estoppel by virtue of his agreement works on him personally.

II.  The evidence tends to show that early in 1907 plaintiff purchased the bonds, the coupons of which he now sues on, and later in the year 1907 sold them to his father, repurchasing them from his father in 1915. We think that it is a fair inference from the evidence that he was and acted as his father's trustee, as he handled his father's estate from 1907 to 1915, inclusive. While plaintiff testified to the sale of the bonds to his father in 1907 and to the repurchase of them from his father in 1915, we think the record contains facts, which we have set forth, from which it may be fairly inferred that there was not a bona-fide sale of the bonds by him to his father in 1907, and that plaintiff, from the time he purchased them in 1907, continued to own the bonds. Plaintiff's testimony as to the sale of the bonds by him to his father is not clear, unequivocal and unimpeached. The issue of plaintiff's ownership of the bonds at the time he signed the agreement was submitted to the jury and found against him.

The Commissioner recommends that the motion for rehearing be overruled.

PER CURIAM:—The foregoing opinion of DAVIS, C., on motion for rehearing is adopted as the opinion of the court. The motion for rehearing is accordingly overruled. *Daues, P. J., Becker* and *Nipper, JJ.,* concur.